**A.G. EDWARDS & SONS, INC., Plaintiff,**

v.

**Gregory Udall SMITH, et al., Defendants.**

**No. CIV 88–1445 PHX RCB.**

United States District Court, D. Arizona.

March 17, 1989.

James E. Brophy, III, Michael D. Moberly, Ryley, Carlock & Applewhite, Phoenix, Ariz., for plaintiff.

Gregory L. Miles, Udall, Shumway, Blackhurst, Allen, Lyons & Davis, P.C., Mesa, Ariz. and Keith K. Hilbig, Eric A. Mitnick, Henry Josefsberg, Smith & Hilbig, Torrance, Cal., for defendants.

## ORDER

BROOMFIELD, District Judge.

This matter is before the Court on Defendants motion to dismiss Counts 1 through 10 and for more definite statement with regard to Count 11 of plaintiff's complaint. Plaintiff in response requests that this Court deny defendants' motion or in the alternative moves for leave to file an amended complaint.

This is an action brought by plaintiff A.G. Edwards & Sons, Inc., to recover damages for alleged securities fraud, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), violation of Title IX of the Organized Crime Control Act of 1970, as amended 18 U.S.C. § 1961 *et seq.*, fraud, violation of Title 44, Chapter 12 of the Arizona Revised Statutes, and breach of contract and to compel arbitration under 9 U.S.C. § 1 *et seq.*

Plaintiff is a securities broker/dealer registered with the Securities and Exchange Commission. It is a corporation incorporated under the laws of the State of Delaware with its principal place of business at St. Louis, Missouri. Defendants and Milan D. Smith, now deceased, are all persons who engaged in the frequent purchase and sale of securities through plaintiff brokerage house from approximately 1980 through October 1987. Plaintiff alleges that during this time period, each defendant made fraudulent statements regarding their financial circumstances and their willingness and ability to bear the risks of securities transactions in which they wished to engage. Plaintiff also alleges that based upon these representations, it agreed to open and maintain accounts on their behalf and to enter into certain types of securities transactions in those accounts. One specific type of transaction permitted defendants to enter orders with plaintiff for the purchase and sale of put and call options on equity securities and security indexes. This procedure evidently permitted, directed or instructed plaintiff to engage in the purchase and sale of securities, including stocks, bonds and options on defendants' behalf. Plaintiff claims that as a result of these types of transactions, defendants accounts incurred substantial losses for which plaintiff demanded payment from defendants. Plaintiff further claims that defendants refused and/or did not intend to satisfy the debts in their accounts contrary to their earlier representations and that as a result of these fraudulent misrepresentations, plaintiff suffered damages in an amount not less than $392,824.85.

Defendants now move to dismiss plaintiff's claims for fraud, RICO violations, violations of Section 10(b) and Rule 10b–5, violation of Arizona securities and anti-racketeering laws (AZRAC), and to compel arbitration, and have moved for a more definite statement with respect to plaintiff's breach of contract claim.

## LEGAL STANDARD

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) raises the issue of the failure of the pleading to state a claim upon which relief can be granted. In considering this type of motion, the complaint is liberally construed and is viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a claim unless the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Thus, the complaint will not be dismissed merely because the plaintiff's allegations do not support the particular legal theory he advances, since the court is under a duty to examine the complaint to determine if the allegations provide a basis for relief under any possible theory. *Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686. Rule 8 of the Federal Rules of Civil Procedure requires merely a short and plain statement of the claim, rather than specific facts detailing every allegation.

Fed.R.Civ.P. 12(e) provides that a party may move for a more definite statement if a pleading to which a responsive pleading is permitted is so vague or ambiguous that the moving party cannot reasonably be required to frame a responsive pleading. However, motions for a more definite statement are not favored by the courts since pleadings in the federal courts are only required to fairly notify the opposing party of the nature of the claim. *United States v. Northside Realty,* 324 F.Supp. 287 (N.D.Ga.1971). A motion under Fed.R.Civ.P. 12(e) is only proper when a party is unable to determine the issues he must meet. *Fischer & Porter Co. v. Sheffield Corp.,* 31 F.R.D. 534 (D.C.Del.1962). It should not be used to test an opponent's case by requiring him to allege certain facts or retreat from his allegations. *Juneau Square Corp. v. First Wisconsin Nat. Bank,* 60 F.R.D. 46 (E.D.Wis.1973).

## ANALYSIS

1. Failure to Plead Fraud with Specificity

Defendants first argument in support of their motion to dismiss is that plaintiff

failed to plead fraud with specificity or particularity as required by Fed.R.Civ.P. 9(b). Rule 9(b) provides that "in all averments of fraud ... the circumstances constituting fraud or mistake shall be stated with particularity." Defendants assert that Counts 2 (Rule 10b–5), 3 (common law fraud), 4 (conspiracy to defraud), 5 (Arizona securities fraud), 6 and 7 (RICO), and 8, 9, 10 (AZRAC), all of which are based upon allegations of fraud, fail to state a claim upon which relief can be granted.

Specifically, defendants argue that plaintiff fails to allege that the representations made by defendants concerning their net worth and investment experience were false. Furthermore, plaintiff's allegation of fraudulent concealment is stated in a conclusory fashion.

A motion to dismiss a securities fraud complaint for insufficiency is decided on the basis of the complaint. *Rathborne v. Rathborne*, 683 F.2d 914 (5th Cir.1982). In order to comply with Rule 9(b), plaintiff must provide enough information so that defendants can answer the specific allegations of fraud. Mere conclusory allegations of fraud will not suffice; the complaint must contain statements of the time, place and nature of the alleged fraudulent activities. *Bosse v. Crowell Collier and MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977).

Plaintiff's complaint complies with the requirements of Rule 9(b). It sets forth specific statements concerning the time and nature of the allegedly fraudulent activities. Paragraph 10 of the complaint alleges in general terms that defendants engaged in fraudulent conduct directed at plaintiff through misrepresentations and material omissions of fact. Paragraphs 11 through 70 then proceed to detail the specific date and nature of each defendant's misrepresentation or material omission of fact, the fact of plaintiff's reliance on defendants' actions or omissions, and the dates of the purchase or sale of securities induced by defendants' alleged fraudulent conduct. The inclusion of these necessary allegations in the complaint satisfies plaintiff's burden of pleading a securities fraud

claim with particularity under Rule 9(b). *See Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439–40 (9th Cir.1987); *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973).

This Court does find plaintiff's complaint deficient in that it does not adequately identify in what form and to which employee at plaintiff that the alleged fraudulent misrepresentations or omissions of fact were made. Plaintiff does attach to its complaint as exhibits, copies of customer's agreements or option account agreements signed by the various defendants. However, plaintiff fails to specifically connect them to defendants' alleged wrongful conduct and instead refers to them only in relation to its claim to compel arbitration of the controversy. Normally such a defect in pleading could prove fatal. In these circumstances, however, the Court is guided by the general rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Scheuer, supra*, 416 U.S. at 236, 94 S.Ct. at 1686. In other words, if the complaint is sufficiently specific to give fair notice of the nature of the action, it will survive an Fed.R.Civ.P. 12(b)(6) motion to dismiss. *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir.1974). Such is the case here where plaintiff's complaint states a viable claim for recovery and gives defendants fair notice as to the nature of the action. In addition, it states with the necessary specificity the allegations and circumstances of defendants alleged fraudulent conduct under Rule 9(b). Granting defendants motion to dismiss would not be warranted in this situation. The Court is satisfied that the information concerning how and to whom the fraudulent misrepresentations were made can be determined though various discovery and pretrial procedures under the Federal Rules so as not to prejudice the rights of defendants.

### 2. Failure to State a Federal Securities Violation Claim

Defendants second argument in support of their motion to dismiss is directed to

Count 2 of the complaint which alleges violations of Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934. Defendants assert that Count 2 should be dismissed for failure to state a claim in that plaintiff lacks standing under the act; the alleged misrepresentations are not actionable; the complaint fails to allege transaction causation; and the complaint fails to allege loss causation.

The question as to whether plaintiff lacks standing to assert a violation of the Securities Exchange Act is determined by reference to section 10(b) of the Act, 15 U.S.C. § 78j(b). Under this section, a plaintiff must allege a fraud loss connected to the purchase or sale of a security. *Securities Investor Protection Corp. v. Vigman*, 803 F.2d 1513, 1517 (9th Cir.1986). Defendants argue that plaintiff is merely a brokerage house which has neither purchased nor sold securities connected to the fraud it has alleged and therefore lacks standing to assert an action under the Act.

■ The requirement that a party be a purchaser or seller must be read flexibly. *Mullen v. Sweetwater Development Corp.*, 619 F.Supp. 809, 814 (D.C.Colo.1985). A purchase or sale within the meaning of the 1934 Act is not necessarily a technical purchase or sale in the common law sense. *Id.* at 814. The Act defines the terms "buy" and "purchase" to include any contract to buy, purchase, or otherwise acquire, 15 U.S.C. § 78c(a)(13), and the terms "sale" and "sell" as including any contract to sell or otherwise dispose of a security. 15 U.S.C. § 78c(a)(14). Thus, it has been recognized that holders of contractual rights or duties to purchase or sell securities, such as put and call options, have standing to commence 10b–5 actions. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 751, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975). In *Blue Chip*, the Supreme Court stated:

> Unlike respondent, which had no contractual right or duty to purchase Blue Chip's securities, the holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been recognized as "purchasers" or "sellers" of securities for purposes of Rule 10b–5, not because of a judicial conclusion that they were similarly situated to "purchasers" or "sellers," but because the definitional provisions of the 1934 Act themselves grant them such a status.

■ There is no reason why a securities broker cannot be deemed a purchaser for purposes of section 10(b). *Jefferies & Company, Inc. v. Arkus–Duntov*, 357 F.Supp. 1206, 1213 (S.D.N.Y.1973). In *Jefferies*, the court ruled that a broker could sue a customer who had defrauded him in violation of the Exchange Act by virtue of the fact that the broker was in effect a forced purchaser of a security in connection with which there was an alleged 10(b) violation.

In this case, plaintiff allowed defendants to buy and sell put and call options on both equity securities and securities indexes. Defendants sold put options prior to the October, 1987 precipitous stock market decline which were later purchased after that decline by plaintiff for defendants' accounts thereby resulting in substantial losses for which defendants' have allegedly refused to compensate. As a result, plaintiff was itself a purchaser of call options even though it was on behalf of defendants. Plaintiff therefore has standing under the standard set forth in *Blue Chip* to bring an action under the Securities Exchange Act of 1934.

■ In addition to attacking plaintiff's allegations concerning defendants violation of the Securities Exchange Act on standing grounds, defendants also argue that any alleged misrepresentations or omissions of fact they may have made are not actionable since they were not connected with the purchase or sale of securities. Defendants state that in order to be actionable, the fraud must be in connection with or induce specific securities transactions. Defendants further state that at most, plaintiff relied upon defendants' alleged misrepresentations or omissions when opening defendants customer accounts years ago. However, since such accounts are not themselves securities within the meaning

of section 10(b), defendants claim that plaintiff cannot state a federal cause of action as to any alleged fraud connected with the opening of such account.

The Court finds that the alleged misrepresentations or omissions of fact could very well have induced plaintiff to open accounts with defendants and enter into arrangements whereby it in effect acted as a purchaser of securities on behalf of defendants. If, based upon defendants' misrepresentations, plaintiff entered into this type of transaction believing defendants financial condition to be something that it was not, then the misrepresentations could conceivably have played a major role in plaintiff's decision.

■ Finally with regards to the federal securities claims, defendants argue that plaintiff fails to allege "loss" or "transaction" causation. On this point, the Court is guided by the Supreme Court's decision in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). In *Affiliated Ute,* the Court ruled that the causation requirement in securities fraud cases could be inferred from the materiality of the misrepresentation.

> Under circumstances involving primarily a failure to disclose, positive proof or reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of the decision. [Citations omitted.] This obligation to disclose and the withholding of a material fact establish the requisite element of causation in fact.

Id. at 153–154, 92 S.Ct. at 1472.

Plaintiff alleges it was induced to open accounts for the defendants and permitted to engage in transactions which resulted in loss to plaintiff. Plaintiff claims its actions were caused by alleged misrepresentations by defendants concerning defendants' financial conditions and ability to enter into the type of financial transactions contemplated by the parties. Defendants had an obligation to disclose complete and accurate information regarding their financial status. If indeed defendants' failure to disclose their inability to engage in put and call option transactions was the cause of plaintiff's loss, then defendants omission or failure to disclose their true financial conditions was a material misrepresentation sufficient to establish the requisite element of both "loss" and "transactional" causation. *Id.*

### 3. Choice of Law Provision

■ Defendants third main argument supporting its motion to dismiss involves the pendent state claims contained in Counts 5, 8, 9, and 10 of the complaint based on Arizona securities fraud and racketeering statutes. Defendants maintain that all claims based on Arizona law must fail since the customer agreements entered into by the parties all stipulated that Missouri law would control. The agreements state: "This agreement, its enforcement and the interest charged hereunder shall be governed by the laws of the State of Missouri...."

Arizona's choice of law rule allows private parties to elect governing law "when a transaction bears a reasonable relation to this state and also to another state...." Ariz.Rev.Stat. § 47–1105. Defendants claim that although plaintiff has alleged violations of Arizona securities and organized crimes laws, these allegations stem from, and are dependent upon, the contractual relation between the parties as set forth in the customer agreements. Defendants argue that the choice of law provision should be given effect since the parties transactions bear a reasonable relation to Missouri based upon that being the plaintiff's principal place of business.

Plaintiff, on the other hand, argues that Arizona has a strong public policy favoring the protection of the public from securities fraud. Furthermore, an agreement designating a foreign law should not be given effect if it would violate the public policy of the forum state or result in an evasion of a statute of the forum state. Plaintiff claims that in light of Arizona's strong public policy, the parties were not at liberty to agree that Missouri law would apply to the exclu-

sion of Arizona securities and anti-racketeering laws.

This issue presents the Court with an interesting factual situation. Plaintiff is arguing that its own choice of law provision contained in its own form contract designating the law of its principle place of business does not apply. Defendants, most of whom reside in Arizona, argue that Missouri law should apply even though most, if not all of their contacts and transactions with plaintiff occurred in Arizona.

It would be disingenuous to allow plaintiff to disregard its own choice of law provision whenever plaintiff believes it would be advantageous to do so. Section 187(1) of the Restatement (Second) of Conflict of Laws provides: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1) (1971).

Thus, the modern trend is to uphold choice-of-law clauses even in areas where there is a strong state policy unless the chosen state has no relationship whatsoever to the contract. *See* W. Richman and W. Reynolds, *Understanding Conflict of Laws*, § 73, p. 216–17 (1984). In this instance, the contract and the transactions thereunder bear a reasonable relation to Missouri as evidenced by plaintiff's principal place of business. As a result, the Court will enforce the Missouri choice of law clause and dismiss the pendent state claims contained in Counts 5, 8, 9, and 10 of the complaint which are based on Arizona securities fraud and racketeering statutes.

### 4. Failure to State a Federal RICO Claim

Counts 6 and 7 of plaintiff's complaint seek relief against defendants based upon violation of RICO, 18 U.S.C. § 1962(c). Defendants urge the Court to dismiss the RICO claims for failure to plead the essential elements of a civil RICO claim. Defendants specifically argue that plaintiff fails to allege a pattern of racketeering activity.

Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim for violation of Section 1962(c), plaintiff must allege 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Miller v. Glen & Helen Aircraft, Inc.,* 777 F.2d 496, 498 (9th Cir.1985).

■ Defendants first contention is that plaintiff has failed to sufficiently plead that defendants engaged in racketeering activity. 18 U.S.C. § 1961(1)(D) defines "racketeering activity" as including "any offense involving fraud ... in the sale of securities." Previous cases have similarly held that fraud in the sale of securities qualifies as "racketeering activity" within the meaning of § 1961. *See Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 18 n. 13 (2d Cir.1983); *Yancoski v. E.F. Hutton & Co., Inc.,* 581 F.Supp. 88, 94 (D.C.Pa.1983).

This Court has already ruled that plaintiff satisfied its burden under Fed.R.Civ.P. 9(b) of pleading a securities fraud violation with particularity. This Court has also ruled that plaintiff has stated a claim for fraud in the sale of securities under Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934. In addition, paragraph 106 of plaintiff's complaint specifically alleges that "multiple misrepresentations of fact made by Defendants ... to Edwards so as to defraud Edwards into permitting Defendants ... therein to engage in the purchase and sale of put and call options on stock indexes constitute multiple acts of fraud in the sale of securities and are a pattern of racketeering under 18 U.S.C. Sections 1961(5) and 1962(c)." Thus, the complaint indicates that plaintiff

was induced to enter into transactions for the sale of securities as a result of defendants multiple misrepresentations which were intended to defraud plaintiff. As a result, defendants' alleged fraudulent misrepresentations are predicate acts of "racketeering" that form the "pattern" requirement of plaintiff's RICO claim. Such allegations of fraud satisfy RICO's "racketeering activity" pleading prerequisite.

Since the plaintiff has adequately alleged the predicate acts of fraud in the sale of securities, the Court need not address defendants contention that plaintiff fails to adequately allege the predicate acts of mail fraud and wire fraud.

█ Defendants next allege that even if plaintiff has sufficiently pleaded the requisite predicate acts, the allegations in the complaint are insufficient to establish a RICO enterprise or a *pattern* of racketeering activity as required in § 1962(c). Turning first to the pattern requirement, exactly what constitutes a "pattern" of racketeering activity is a question of some disagreement among the Circuit Courts. RICO itself states only that a "pattern of racketeering activity" requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5). The Supreme Court has yet to set forth a definite statement of what constitutes a pattern other then to suggest in *Sedima* that two isolated acts of racketeering activity do not form a pattern. "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." *Sedima, supra*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

The Ninth Circuit recently undertook to set forth its view on what constitutes a pattern of racketeering in *Medallion Television Ent. v. SelecTV of California*, 833 F.2d 1360 (9th Cir.1987). In *Medallion*, the court viewed the issue as one of whether the requisite predicate acts are isolated or sporadic or whether they indicate a threat of continuing activity.

The presence or absence of continuity among the acts is the distinguishing factor in our cases and is the factor that most influences our decision in this case. Continuity does not require a showing that the defendants engaged in more than one 'scheme' or 'criminal episode.' [citations omitted]. The circumstances of the case, however, must suggest that the predicate acts are indicative of a threat of continuing activity.

*Id.* at 1363.

At this juncture, the Court need not decide whether defendants acts involved more than one scheme or episode or represent a threat of continuing activity so as to satisfy the pattern of racketeering requirement under § 1962(c). The issue in a motion to dismiss is whether plaintiff has stated a claim under § 1962(c). In this instance, plaintiff has done so. Paragraph 99 of the complaint alleges that defendants engaged in predicate acts and courses of conduct constituting fraud in the sale of securities. Plaintiff further alleges that these acts formed a pattern of conduct in that the various defendants made separate misstatements of fact concerning their abilities to pay for all transactions conducted on their behalf. Paragraph 106 alleges that these multiple fraudulent misrepresentations by defendants form a pattern of racketeering under 18 U.S.C. §§ 1961(5) and 1962(c). Thus, plaintiff has adequately alleged a pattern of racketeering so as to state a claim sufficient to survive a motion to dismiss.

█ Similarly, plaintiff has adequately alleged conduct of an enterprise sufficient to state a cause of action under § 1962(c). Plaintiff must allege that defendants conducted or participated "directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). In *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194–95 (9th Cir.1987), the court stated that RICO simply requires a "nexus" between the enterprise and racketeering activity. "Under this 'connection' or 'nexus' requirement, the racketeering activity must in some way stem from the enter-

prise's activities or otherwise have some relationship to the enterprise." *Id.* at 195. RICO does not require that the enterprise itself conduct the racketeering activity. The plaintiff could be the enterprise with the RICO violation stemming from the defendants' direct or indirect conduct or participation in the enterprise's affairs through a pattern of racketeering activity. *Id.* at 194. Paragraph 98 of the complaint alleges that defendants are a group of individuals associated in a scheme to defraud plaintiff and thereby constitute an enterprise. Alternately, Paragraph 105 alleges that plaintiff itself was an enterprise under §§ 1961(4) and 1962(c). Under either theory, plaintiff has satisfied the requisite allegation of conduct of an enterprise element of a RICO cause of action. If plaintiff itself is the enterprise, to satisfy the nexus requirement plaintiff must merely allege some relationship between the racketeering activity and itself which plaintiff has done. *Id.* at 195. Alternately, a nexus exists when one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise. *Id.* at 195. Paragraph 106 alleges that the scheme to defraud plaintiff was implemented through defendant Gregory Udall Smith, a former employee of plaintiff.

■ Finally, paragraphs 101 and 107 allege that defendants conspired to engage in a pattern of racketeering activities through an agreement or agreements not to satisfy any deficits arising as a result of their transactions with plaintiff. As such, plaintiff has stated a claim of conspiracy under § 1962(d).

It may well be that plaintiff will be unable to prove the requisite elements of a RICO claim to satisfy the standard set forth by the Supreme Court in *Sedima.* At this point, however, plaintiff has alleged the elements of a RICO claim against defendants with sufficient particularity to survive a motion to dismiss.

### 5. Breach of Contract Claim

■ Defendant argues that Count 11 of plaintiff's complaint which alleges a claim for breach of contract is deficiently pleaded and subject to a motion for more definite statement.

Count 11 of plaintiff's complaint, although not exactly a model of comprehensiveness, nevertheless does allege the essential elements of a breach of contract claim. The existence of agreements or contracts between plaintiff and defendants is alleged in paragraph 134. References to specific written agreements between the parties are set forth in paragraph 72 and these agreements are attached to the complaint as Exhibits A—K. Paragraph 135 of the complaint specifies the pertinent provisions of the contracts which form the basis of plaintiff's cause of action while paragraph 137 alleges that defendants breached those contracts by failing to pay amounts owed to plaintiff. Paragraph 138 sets forth the amount of damages. As a result, plaintiff has stated a claim for breach of contract and defendants have sufficient information upon which they may answer without the need for a more definite statement as to Count 11.

### 6. Claim to Compel Arbitration

■ Count 1 of plaintiff's complaint is a cause of action to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982) (hereinafter "Arbitration Act"). The contracts or agreements between plaintiff and defendants each contain arbitration clauses providing for arbitration of any claim or controversy arising between the parties excepting those issues for which remedies may exist pursuant to a right of action under federal securities laws.

Defendants move to dismiss Count 1 for failure to state a claim by arguing that plaintiff fails to allege that it complied with the terms of the arbitration clauses. That, however, is not the pertinent issue for purposes of this motion to dismiss. The issue for the Court to decide is whether plaintiff states any claim or cause of action in its complaint which could be subject to arbitration. The breach of contract claim contained in Count 11 of the complaint is clearly subject to the arbitration clause. Thus, the Court cannot dismiss Count 1 of the complaint which alleges a claim under the

Arbitration Act if the complaint contains any claim or cause of action which is subject to arbitration.

As currently formulated, defendants' motion appears to be directed at obtaining from this Court a determination of which of plaintiff's claims are and are not arbitrable. That issue is not in front of the Court at this time and thus will not be addressed. The parties may, if set forth in proper fashion, request the Court to determine which claims are subject to arbitration. Absent such a request, the Court declines to do so in context of the present motion to dismiss.

Defendants motion to stay arbitration, having effectively been in place during the pendency of the determination of this motion, will be hereby vacated and lifted 15 days after the date of filing of this order.

IT IS ORDERED granting defendants motion to dismiss as to Counts 5, 8, 9 and 10 of plaintiff's complaint but denying the motion as to Counts 1, 2, 3, 4, 6, 7, and 11.

IT IS FURTHER ORDERED denying defendants motion for a more definite statement as to Count 11 of plaintiff's complaint.

IT IS FURTHER ORDERED denying defendants motion to stay arbitration.

IT IS FURTHER ORDERED that the stay of arbitration currently in effect be lifted 15 days after the date of filing of this order.