207 F.Supp.2d 951 (2001)
Sarah TINDER, et al., Plaintiffs,
v.
LEWIS COUNTY NURSING HOME DISTRICT, et al., Defendants.
No. 2:00CV0096(MLM).
United States District Court, E.D. Missouri, Northern Division.
October 17, 2001.
*952 Kurt E. Wolfgram, Kurt E. Wolfgram Law Office, P.C., St. Louis, MO, Danny L. Cornell, Bell & Ort, New London, IA, for Plaintiffs.
Paul W. Johnson, Burroughs and Hepler, Edwardsville, IL, for Defendants.
Gena J. Awerkamp, Schmiedeskamp and Robertson, Quincy, IL, for Michael Dykstra.

MEMORANDUM AND ORDER
MEDLER, United States Magistrate Judge.
Plaintiffs Sarah Tinder, Anna Williams, Willis Sly, William Sly and the Estate of Duane Sly (Sarah Tinder, Administrator) ("Plaintiffs") filed the instant cause of action against Defendants Lewis County Nursing Home District, Mary Grayson, Nancy Costner, Diane Jorgenson, Mildred Huebotter ("Lewis County Defendants") and Dr. Michael Dykstra.[1] Presently pending before the Court are: (1) Lewis County Defendants' motion to dismiss [10]; (2) Defendant Dykstra's motion to dismiss [11]; (3) Lewis County Defendants' motion for more definite statement [24]; (4) Lewis County Defendants' motion to strike [26]; and (5) Lewis County Defendants' motion to transfer this case to the Northern Division of the Eastern District of Missouri. [28] The parties have consented to the jurisdiction of the undersigned United *953 States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [30]

I.

PLAINTIFFS' COMPLAINT
The facts supporting Plaintiffs' complaint are essentially as follows. On November 25, 1998, Duane Sly, the father of the Plaintiffs herein, was admitted to the special care unit of Lewis County Nursing Home. Mr. Esther Pruett, another patient, was admitted to special care and placed in the same room as Duane Sly. On December 11, 1998, Pruett severely and repeatedly beat Duane Sly with a wooden cane. Duane Sly died as a result of the incident.
Plaintiffs filed this eight-count complaint, comprised of 147 paragraphs and over 140 subparagraphs. Count I asserts a violation of their constitutional rights pursuant to 42 U.S.C. § 1983. Count II asserts a violation of the Omnibus Budget Reconciliation Act and Nursing Reform Act. Count III alleges general negligence. Count IV alleges a violation of the Missouri Omnibus Nursing Home Act. Count V is a negligence per se allegation. Count VI is a breach of contractual duty claim. Count VII alleges a "dangerous condition" claim. Count VIII asserts a "spoliation of evidence" claim.

II.

LEWIS COUNTY DEFENDANTS' MOTION TO DISMISS
The Lewis County Defendants have filed a motion to dismiss Plaintiffs' complaint in its entirety. First, Defendants move to dismiss Plaintiffs' complaint for failure to comply with Mo.Rev.Stat. § 538.225. Second, they move to dismiss Count I because: (1) Defendants are not state actors under § 1983; and (2) Plaintiffs have not been deprived of a right protected by the Constitution or other federal laws. Third, Defendants move to dismiss Counts II and V on the ground that the Omnibus Budget Reconciliation Act does not permit a private cause of action. Next, they move to dismiss Count IV for failing to comply with the deadlines set forth in the Missouri Omnibus Nursing Home Act. Plaintiffs then move to dismiss Count VI claiming the facts do not support a breach of contract claim. Finally, Plaintiffs move to dismiss Count VIII as no Missouri or Federal case has recognized "spoliation" as an independent cause of action. Defendants also argue that, if the Court dismisses those counts upon which federal jurisdiction is based, then the Court should decline to exercise supplemental jurisdiction over all of the remaining state law claims.

A. AFFIDAVIT
Defendants move to dismiss Plaintiffs' entire complaint on the basis that Plaintiffs have failed to file the required affidavits with the Court pursuant to Mo.Rev. Stat. § 538.225. Chapter 538 of the Missouri Revised States governs tort actions based on improper health care. Section 538.225 provides as follows:
1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.
2. The affidavit shall state the qualifications of such health care providers to offer such opinion.

*954 3. A separate affidavit shall be filed for each defendant named on the petition.
4. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown orders that such time be extended.
5. If the plaintiff or his attorney fails to file such affidavit the court may, upon motion of any party, dismiss the action against such moving party without prejudice.
§ 538.225.
The definitions set forth in § 538.205 provide that a "health care provider" under this Chapter includes "any physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility, dentist, registered or licensed practical nurse ... and any other person or entity that provides health care services under the authority of a license or certificate." § 538.205(4) (emphasis added).
No one disputes that Lewis County Nursing Home is a long-term facility or otherwise an entity that provides health care services. Moreover, no one disputes that the individually-named defendants are registered or licensed practical nurses or other people providing health care services within the meaning of this statute. Pursuant to these statute sections, Defendants move to dismiss Plaintiffs' entire complaint on the basis that they failed to file the required affidavit.
Subsequent to the filing of Defendants' motion to dismiss, however, Plaintiffs did file an affidavit with the Court. [14] The affidavit was filed on February 23, 2001. Plaintiffs' complaint was filed on November 27, 2000. Thus, the affidavit was filed within the 90-time limit. The Court notes that Defendants have not challenged the sufficiency of the affidavit in any respect. Therefore, the Court finds that Defendants' motion to dismiss on this ground should be denied.

B. COUNT I: § 1983
In Count I of their Complaint, Plaintiffs assert a violation of 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege facts tending to show (1) that he has been deprived of a right secured by the Constitution or the laws of the United States, and (2) that the deprivation was caused by a person or persons acting under color of state law. Roe v. Humke, 128 F.3d 1213, 1215 (8th Cir.1997). See also Bass v. Parkwood Hospital, 180 F.3d 234, 241 (5th Cir.1999). Defendants move to dismiss Count I of Plaintiffs' complaint arguing: (1) Defendants are not state actors under § 1983; and (2) Plaintiffs have not been deprived of a right secured by the Constitution or federal law. The Court finds that Defendants' motion fails on both grounds.

1. Person acting under color of state law
Defendants contend that Plaintiffs cannot assert a claim under § 1983 because any deprivation of a right was not caused by a person acting under color of state law. The Court disagrees.
The traditional definition of acting under color of state law requires "that the defendant in a § 1983 action have exercised power `possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" [West, 487 U.S. at 48, 108 S.Ct. 2250] (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 49-50, 108 *955 S.Ct. at 2255 (citations omitted). We have explained that "[t]he injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible." Parker v. Boyer, 93 F.3d 445, 448 (8th Cir.1996) (citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)), cert. denied, 519 U.S. 1148, 117 S.Ct. 1081, 137 L.Ed.2d 216 (1997).
Roe, 128 F.3d at 1215-16.
Here, Defendants admit that Lewis County Nursing Home District is a governmental entity, created and existing as a creature of statute. It is axiomatic that these Defendants are state actors and, as such, their conduct occurred "under color of state law."[2]

2. Deprivation of Right
The second part of asserting a claim under § 1983 is that the plaintiff was deprived of a right secured by the Constitution or the laws of the United States. Plaintiffs assert both that they were deprived of a right secured by the Constitution or that they were deprived of a right secured by the laws of the United States.

a. Omnibus Budget Reconciliation Act
Plaintiffs claim that they were deprived of a right secured by the laws of the United States in that Defendants failed to comply with the regulations of the Omnibus Budget Reconciliation Act ("OBRA"), a federal statute. As discussed later in this memorandum, OBRA does not allow for a private cause of action. Despite this, the Court finds that OBRA violations may form the basis for Plaintiffs' § 1983 claim. See Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 n. 9, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); Arkansas Medical Society, Inc. v. Reynolds, 6 F.3d 519 (8th Cir.1993); Conner v. Branstad, 839 F.Supp. 1346 (S.D.Iowa 1993). Therefore, Defendants' motion to dismiss on this ground will be denied.

b. Substantive Due Process
Even if OBRA were eliminated as a basis for Plaintiffs' § 1983 claim, the Court finds that Plaintiffs have sufficiently alleged that they were deprived of a right secured by the Constitution. Specifically, Plaintiffs assert that their substantive due process rights were violated. Viewing the facts in the light most favorable to Plaintiffs, as this Court is required to do upon considering a motion to dismiss, the Court finds that Plaintiffs have stated a cause of action under § 1983.
Nothing in the language of the Due Process Clause imposes upon the state an affirmative obligation to protect or care for particular individuals. DeShaney v. Winnebago Cty. Dep't of Social Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); Gregory v. City of Rogers, 974 F.2d 1006, 1009 (8th Cir. 1992). Rather, the "Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." DeShaney, 489 U.S. at 195, 109 S.Ct. 998; See also Collins v. City of Harker Heights, 503 U.S. 115, 125-27, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Nevertheless, this court has held that the Due Process Clause imposes a duty on state actors to protect or care for citizens in *956 two situations: "first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." Gregory, 974 F.2d at 1010....
Carlton v. Cleburne County, Ark., 93 F.3d 505, 508 (8th Cir.1996).
Although Plaintiffs assert that the decedent was in "custody" or was otherwise limited in his ability to care for himself (thereby meeting the first prong, albeit questionably), Plaintiffs also assert that Defendants created danger for the decedent in that, by placing Mr. Pruett in the room with the decedent and failing to supervise him properly, Defendants placed the decedent in a position of danger he would not have otherwise encountered. Carlton, 93 F.3d at 507. See also S.S. by Jervis v. McMullen, 186 F.3d 1066, 1070-1072 (8th Cir.1999). Based on this "creation of danger" prong of a substantive due process claim, the Court finds that Plaintiffs have stated a cause of action under § 1983 sufficient to survive a motion to dismiss. Therefore, Defendants' motion to dismiss on this ground will be denied.[3]

C. COUNT II: Omnibus Budget Reconciliation Act
In Count II of Plaintiffs' complaint, Plaintiffs claim that Defendants violated certain regulations of the Omnibus Budget Reconciliation Act ("OBRA") and the Nursing Home Reform Act ("NHRA"). The Lewis County Defendants move to dismiss Count II of Plaintiffs' complaint on the grounds that Plaintiffs do not have a private cause of action under OBRA or the NHRA.
For purposes of placing Defendants' motion to dismiss Count II in context, the Court quotes the following discussion from Brogdon v. National Healthcare Corp., 103 F.Supp.2d 1322 (N.D.Ga.2000) regarding the Medicare Act, the Medicaid Act and OBRA:
The Medicare Act ... is a federal program designed to provide health insurance for aged and disabled persons.... The Health Care Financing Administration ("HCFA"), an agency within the Department of Health and Human Services, oversees the implementation of this program.
The Medicaid Act ... is a joint program funded by both the federal and state governments designed to provide medical assistance to certain persons in need.... The Medicaid Act is administered by the individual states that choose to participate in the program. If a state participates in the program, the state must comply with the requirements of the Medicaid Act and its implementing regulations.... All fifty states have chosen to participate in the program.
The Medicare and Medicaid programs both authorize the payment of federal funds to reimburse nursing facilities for certain services provided to their residents. To qualify for reimbursement, a facility must be certified to participate in the programs.... State survey agencies typically are responsible for conducting inspections of the facilities to ensure their compliance with the participation requirements. *957 Before Congress amended the Medicare and Medicaid Acts in 1987, only two sanctions were available against nursing homes for noncompliance with federal participation requirements. First, the Secretary of Health and Human Services or the States could decertify the facility and terminate the nursing home from eligibility to receive Medicaid reimbursements.... Second, if non-compliance was not an immediate and serious threat to the residents' health and safety, the Secretary or the States could deny payment for new admissions for up to eleven months....
These sanctions were rarely invoked.... As a result, the programs permitted too many substandard nursing homes to continue in operation. Congress thus became "deeply troubled that the Federal Government, through the Medicaid program, continue[d] to pay nursing facilities for providing poor quality care to vulnerable elderly and disabled beneficiaries...."
In 1987, Congress passed the Federal Nursing Home Reform Act ("FNHRA"), contained in the Omnibus Budget Reconciliation Act of 1987 ... which provides for the oversight and inspection of nursing homes that participate in Medicare and Medicaid programs. The OBRA '87 amendments require that participants must be subjected to an unannounced "standard survey" at least once every fifteen months....
Additionally, the OBRA '87 amendments include a number of intermediate sanctions to encourage compliance with federal participation requirements. Specifically, Congress allowed for the denial of payments for all Medicare beneficiaries and all newly admitted Medicaid beneficiaries, civil monetary penalties under both Medicaid and Medicare for each day of non-compliance (not to exceed $10,000 for each day of noncompliance under Medicare), appointment of temporary management, and under Medicaid, closure of the nursing home and transfer of residents to other facilities.
Brogdon, 103 F.Supp.2d at 1327-28.
Defendants move to dismiss Count II of Plaintiffs' complaint on the ground that a private cause of action does not exist under the above-discussed regulatory scheme. The Court has reviewed Defendants' argument and Plaintiffs' response thereto[4] and finds that it agrees with Defendants.
The OBRA and NHRA regulations are part of a regulatory scheme designed to bring long term care facilities into substantial compliance with federal Medicare and Medicaid requirements and were not intended to establish an independent cause of action for violations of those requirements. The majority of the Courts to consider the issue have concluded consistently that a private cause of action does not exist under Medicare/Medicaid and the OBRA amendments. Thus, Defendants' motion to dismiss Count II will be granted.[5]See e.g. Stewart v. Bernstein, 769 F.2d 1088, 1092-93 (5th Cir.1985); Brogdon *958 v. National Healthcare Corp., 103 F.Supp.2d 1322, 1330-1331 (N.D.Ga.2000); Ayres v. Beaver, 48 F.Supp.2d 1335, 1340 (M.D.Fla.1999);

D. COUNT IV: Missouri Omnibus Nursing Home Act
To set forth a cause of action under the Missouri Omnibus Nursing Home Act, §§ 198.003-186, one must meet a particular time frame. Section 198.093 of the Act provides, in pertinent part:
1. Any resident or former resident who is deprived of any right created by sections 198.088 and 198.090, or the estate of a former resident so deprived, may file a written complaint within one hundred eighty days of the alleged deprivation or injury with the office of the attorney general describing the facts surrounding the alleged deprivation.
* * * * * *
3. If the attorney general fails to initiate a legal action within sixty days of receipt of the complaint, the complainant may, within 240 days of filing the complaint with the attorney general, bring a civil action in an appropriate court against any owner, operator, or the agent of any owner or operator to recover actual damages.
Defendants argue that Plaintiffs are timebarred from asserting any cause of action under the Missouri Omnibus Nursing Home Act. This Court agrees.
The injury here occurred in December 1998. Therefore, Plaintiffs were required to file a written complaint with the Missouri Attorney General in or before June 1999. However, Plaintiffs acknowledge that they did not file the required report to the Missouri Attorney General's office until May 30, 2000. Therefore, the Court finds that Plaintiffs failed to meet the reporting requirements of the Missouri Omnibus Nursing Home Act. See Stiffelman v. Abrams, 655 S.W.2d 522 (Mo.1983). Count IV of Plaintiffs' complaint will be dismissed.

E. COUNT V: Negligence Per Se
In Count V, Plaintiff alleges negligence per se, again on the basis that the Lewis County defendants violated certain OBRA/NHRA regulations. For the reasons already stated in subsection C, above, the Court finds that Count VI should be dismissed.

F. COUNT VI: Violation of Contractual Duty
In Count VI of their complaint, Plaintiffs allege a "violation of contractual duty" theory. The contract upon which Plaintiffs base their claim is the decedent's Admission Agreement with Lewis County, attached as Exhibit A to Plaintiffs' complaint.
The Court finds that Plaintiffs' claim sounds in tort and not in contract. Therefore, pursuant to the analysis set forth in Brickey v. Concerned Care of the Midwest, Inc., 988 S.W.2d 592 (Mo.App.1999), the Court will dismiss Count VI of Plaintiffs' complaint.

G. COUNT VIII: Spoliation of Evidence
For Plaintiffs' eighth count for relief, Plaintiffs assert that various personnel of the Lewis County Nursing Home District cleaned up the bloody mess which was left in the decedent's room after he was beaten to death by his roommate. According to Plaintiffs, because Defendants did this, they committed the tort of "spoliation."
"Spoliation" is the destruction or significant alteration of evidence. In Missouri, if a party has intentionally spoliated evidence, that party is subject to an adverse evidentiary inference. Baugher v. Gates Rubber Company, Inc., 863 S.W.2d *959 905, 907 (Mo.App.1993). Although some states recognize an independent cause of action for spoliation of evidence, the majority of states to consider the issue, including Missouri, do not recognize spoliation, either intentional or negligent, as the basis for tort liability. Baugher, 863 S.W.2d at 907-08. See Lucas v. Christiana Skating Center, Ltd., 722 A.2d 1247 (1998), and the cases cited therein. Therefore, Count VIII of Plaintiffs' complaint will be dismissed.

H. SUMMARY
For the reasons stated, the Court finds that the Lewis County Defendants' motion to dismiss should be granted in part and denied in part. The motion will be denied with respect to Count I. However, the motion will be granted with respect to Counts II, IV, V, VI and VIII. Defendants did not move to dismiss Counts III and VII. Therefore, these two counts remain, together with Count I, against the Lewis County Defendants.

III.

DEFENDANT DYKSTRA'S MOTION TO DISMISS
Defendant Dykstra moves to dismiss Plaintiffs' complaint for several, but not all, of the same reasons the Lewis County Defendants moved to dismiss Plaintiffs' complaint. First, Defendant Dykstra contends that Plaintiffs' § 1983 claim does not establish a cause of action because the defendants are private actors and were not acting under color of state law. The Court has already found this argument to be without merit.
Next, Defendant Dykstra moves to dismiss Plaintiffs' complaint on the ground that Plaintiffs' § 1983 claim does not assert a deprivation of a right guaranteed by the Constitution or federal laws. Again, the Court earlier found this argument to be without merit.
Third, Defendant Dykstra contends that, in light of the fact that Plaintiffs have no federal jurisdictional basis for their claims, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. This Court has found that Plaintiffs have stated a claim under § 1983. Therefore, Defendant Dykstra's final argument is moot.
For the reasons stated herein, the Court finds that Defendant Dykstra's motion to dismiss is lacking in merit. The motion will be denied.

IV.

LEWIS COUNTY DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT
Defendants move for a more definite statement on the grounds that Plaintiffs' complaint is vague and ambiguous. Defendants identify various paragraphs contained in Count I, Count II and Count V which they believe to be vague and ambiguous.
Federal Rule of Civil Procedure 12(e) provides in relevant part that: "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." A motion for more definite statement is proper when a party is unable to determine issues he must meet, A.G. Edwards & Sons, Inc. v. Smith, 736 F.Supp. 1030, 1032 (D.Ariz.1989), or where there is a major ambiguity or omission in the complaint that renders it unanswerable. Farah v. Martin, 122 F.R.D. 24, 25 (E.D.Mich.1988). However, due to liberal notice pleading and the availability of extensive discovery, motions for a more definite statement are universally disfavored. *960 Geir By and Through Geir v. Educational Service Unit No. 16, 144 F.R.D. 680, 685 (D.Ne.1992); Prudhomme v. Procter & Gamble Co., 800 F.Supp. 390, 396 (E.D.La. 1992); Weiszmann v. Kirkland and Ellis, 732 F.Supp. 1540, 1549 (D.Colo.1990) (in light of liberal discovery available to all parties under federal rules, motions under Rule 12(e) are discouraged); Frederick v. Koziol, 727 F.Supp. 1019, 1020-21 (E.D.Va. 1990) (12(e) motion is not favored and ought not be used as a substitute for discovery); Zamora v. Massey-Ferguson, Inc., 336 F.Supp. 588 (S.D.Iowa 1972) (where matters sought through 12(e) motion are subject to discovery, the discovery rules provide a more satisfactory method of narrowing the issues and 12(e) motion will not be favored).
Motions for more definite statement are designed to strike at unintelligibility rather than lack of detail in the complaint. Cox v. Maine Maritime Academy, 122 F.R.D. 115, 116 (D.Me.1988). They are not to be used to test the opponent's case by requiring him to allege certain facts or retreat from his allegations. A.G. Edwards & Sons, Inc., 736 F.Supp. at 1032. And, they are not to be used as a substitute for discovery in trial preparation. Oceanic Cablevision, Inc. v. M.D. Electronics, 771 F.Supp. 1019, 1022 (D.Ne. 1991); Delta Educ., Inc. v. Langlois, 719 F.Supp. 42, 50-51 (D.N.H.1989); Wheeler v. U.S. Postal Service, 120 F.R.D. 487, 488 (M.D.Pa.1987); Innovative Digital Equipment, Inc. v. Quantum Technology, Inc., 597 F.Supp. 983, 989 (N.D.Ohio 1984).
Plaintiffs's complaint consists of 147 separately-numbered paragraphs with over 140 subparts contained therein. The Court finds the complaint is neither vague nor ambiguous. Certainly, Defendants can frame a responsive pleading to Plaintiffs' complaint. Moreover, to the extent Defendants have any questions about the complaint, the information is more readily available through discovery. Defendants' motion will be denied.

V.

LEWIS COUNTY DEFENDANTS' MOTION TO STRIKE
The Lewis County Defendants have filed a motion to strike. Defendants assert specifically that Plaintiffs' reference in their complaint to attorneys' fees should be stricken from Plaintiffs' complaint as Plaintiffs make no reference to any statute or case citation which would enable them to recover such fees.
As noted by Plaintiffs, however, in their memorandum in opposition to Defendants' motion to strike, Plaintiffs are entitled to attorneys' fees under 42 U.S.C. § 1983 if they prevail in this cause of action. Therefore, Defendants' motion to strike will be denied.

VI.

DEFENDANTS' MOTION TO TRANSFER VENUE
Finally, the Lewis County Defendants move to transfer this case to the United States District Court for the Northern Division of the Eastern District of Missouri. Defendants' motion to transfer venue will be denied as moot as this case is already pending in the Northern Division of the Eastern District of Missouri.

VII.

CONCLUSION
In summary, the Court finds that Plaintiffs have asserted a federal cause of action in the instant case. Thus, this Court presently has jurisdiction over that claim and supplemental jurisdiction over the remaining state law claims. Some of Plaintiffs' *961 claims, however, do not state a cause of action and will therefore be dismissed.
Accordingly,
IT IS HEREBY ORDERED that the Lewis County Defendants' Motion to Dismiss is GRANTED in part and DENIED in part, consistent with this Memorandum and Order. [10]
IT IS FURTHER ORDERED that Counts II, IV, V, VI and VIII of Plaintiffs' complaint are DISMISSED.
IT IS FURTHER ORDERED that Defendant Dykstra's motion to dismiss is DENIED. [11]
IT IS FURTHER ORDERED that the Lewis County Defendants' motion for more definite statement is DENIED. [24]
IT IS FURTHER ORDERED that the Lewis County Defendants' motion to strike is DENIED. [26]
IT IS FINALLY ORDERED that the Lewis County Defendants' motion to transfer venue is DENIED as moot. [28]
NOTES
[1] Although Plaintiffs initially designated "Dr. John Doe" as a defendant in this case, they dismissed this defendant without prejudice on July 10, 2001.[29]
[2] The Court agrees with Plaintiffs that none of the cases cited by Defendants in their brief supports their argument that they are not state actors. In each of those cases, the medical entity was a private organization. Here, the nursing home is not a private organization. It is a public one. Section 1983 therefore applies.
[3] Of course, to prevail on a substantive due process claim, Plaintiffs will eventually have to show that Defendants' conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Whether Plaintiffs meet this burden is more appropriately determined in summary judgment proceedings.
[4] Actually, a review of Plaintiffs' memorandum in opposition to Defendants' motion to dismiss reveals a lack of response by Plaintiffs on this argument, thus suggesting that Plaintiffs concede this argument in light of the great weight of authority in support of Defendants' position.
[5] The Court notes that several of these cases found that, while a private cause of action may not exist under Medicare/Medicaid and the OBRA amendments, these federal laws could nonetheless provide a basis for a § 1983 claim. See e.g., Brogdon, 103 F.Supp.2d at 1330 (even if a plaintiff enjoys a certain federal right under this regulatory scheme sufficient to support a claim under § 1983, this does not necessarily mean the plaintiff possesses a private cause of action to enforce those rights).