874 P.2d 982

**Laurie SANBORN, Plaintiff–Appellee,**

**v.**

**BROOKER & WAKE PROPERTY MANAGEMENT, INC., an Arizona corporation; Del Pueblo Homes, Inc., an Arizona corporation; Lakewood Del Pueblo Limited Partnership, an Arizona limited partnership, Defendants–Appellants.**

No. 1 CA–CV 93–0425A.

Court of Appeals of Arizona, Division 1, Department A.

April 11, 1994.

Stockton & Hing by Robert Ong Hing, Thomas F. Ames, Scottsdale, for plaintiff-appellee.

Robert E. Siesco, Phoenix, for defendants-appellants.

## OPINION

VOSS, Judge.

Appellants, by way of an accelerated appeal,[1] ask this court to reverse the trial court's award of treble damages and attorneys' fees to appellee, Laurie Sanborn. Because we find that appellants unjustifiably withheld an undisputed amount of wages, we affirm the judgment and award.

1. Accelerated appeals are usually disposed of by summary order and as a rule are taken off the accelerated track when they present issues of opinion value. *See* Rule 29(g). This case is a unique exception to the usual approach for two reasons: (1) no oral argument was scheduled,

## FACTS AND PROCEDURAL HISTORY

Appellee was employed by appellants on March 11, 1991, to sell homes in appellants' Lakewood subdivision. Appellee was promised a 1.5% commission on each home she sold, once the sale was final. During her tenure with appellants, appellee wrote sales agreements on a number of homes and collected commission advances of $4,500.

On January 31, 1992, appellee, through her attorney, made a demand for $18,588.10 in commissions she claimed appellants owed her on fourteen of the sales contracts she had written. Appellants responded on February 4, 1992, with a letter and attached ledger sheet claiming they owed appellee only $6,590.52. A check for this amount was included with the letter but was tendered as "full satisfaction of disputed balance for commissions." Appellee refused to endorse the check under those terms and returned it to appellants.

Appellants, after further review of their records, amended their ledger sheet to include two other sales for which appellee claimed commissions were due. Based on these changes, appellants made a revised offer of $9,976.97, again contingent on appellee accepting the check as full and final settlement. Appellee again rejected the offer and stated she would accept $15,750 as full and final settlement. This counteroffer was rejected and appellee filed her complaint on February 18, 1992.

On May 14, 1992, appellants made a third settlement offer, this time for $9,215.32. Appellee rejected this offer on May 19, 1992, and countered with her prior offer of $15,750, which was again rejected. On August 17, 1992, appellants filed a disclosure statement in compliance with Rule 26.1, Arizona Rules of Civil Procedure. In it, appellants stated: "Defendant admits, and has always admitted, that Plaintiff is entitled to some amount for commissions.... [B]ased upon the commis-

thus giving us substantially more than the normal three days in which to issue our decision, Rule 29(d); and (2) the case only presented two narrow issues. Practitioners should note that this unique combination of circumstances will rarely occur and result in an accelerated opinion.

sion sheet which is annexed, Ms. Sanborn is entitled to $9,976.65."

Based on this admission, appellee's attorney wrote to appellants' counsel demanding immediate payment of $9,976.65 and warning that "[y]our client's failure to pay even this undisputed amount, would certainly leave them open to an award of treble damages...." Appellants failed to respond and appellee filed a motion for partial summary judgment for the $9,976.65.

After receiving appellants' response and appellee's reply and hearing oral argument on the issue, the trial court granted partial summary judgment and awarded appellee $8,589.05 [2] trebled to $25,767.15 pursuant to Ariz.Rev.Stat.Ann. (A.R.S.) section 23–355 (1983). Judgment was entered for this amount plus costs, prejudgment interest, and attorneys' fees of $8,589.05. Appellants timely appealed.

## DISCUSSION

### A. *Standard of Review*

Because the material facts in this case are not in dispute, we review only whether the trial court properly interpreted and applied the pertinent statutes to these undisputed facts. Statutory interpretation involves legal rather than factual questions. Thus, we are not bound by the trial court's interpretation of the law and conduct our review de novo. *Hampton v. Glendale Union High School Dist.*, 172 Ariz. 431, 433, 837 P.2d 1166, 1168 (App.1992).

### B. *Treble Damages*

An award of treble damages for unpaid wages is governed by A.R.S. section 23–355, which states: "If an employer, in violation of the provisions of this chapter, shall fail to pay wages due to any employee, such employee may recover ... an amount which is treble the amount of the unpaid wages." An employer is in violation of this chapter if it fails to pay wages due to a discharged employee "within three working days [of discharge] or the end of the next regular pay period,

whichever is sooner." A.R.S. § 23–353(A) (1983). Withholding wages is forbidden unless "[t]here is a reasonable good faith dispute as to the amount of wages due...." A.R.S. § 23–352(3) (1983).

Preliminarily, we note that sales commissions are wages for purposes of these statutes. This is clear from the definition in section 23–350(5), which states: "'Wages' means nondiscretionary compensation due an employee ... for labor or services rendered ... whether determined by a time, task, piece, commission or other method of calculation. Wages include ... commissions...." Accordingly, this chapter applies to the question of whether the trial court abused its discretion in awarding treble damages on appellee's outstanding commissions.

■ Appellants argue that they did not impermissibly withhold appellee's wages because: (1) they made good faith settlement offers before and during the litigation which exceeded the base amount eventually awarded to appellee; and (2) their disagreement with appellee's demands constituted a good faith dispute under section 23–352(3), which permitted them to withhold *all* outstanding wages without incurring treble damages.

Appellants' first argument is resolved by our holding in *Patton v. County of Mohave*, 154 Ariz. 168, 741 P.2d 301 (App.1987). In that case, we held that a good faith effort to settle "is not synonymous with a good-faith refusal to pay the wages in the first place." *Id.* at 172, 741 P.2d at 305. We found that Mohave County acted unreasonably in claiming it did not owe its former employee anything. *Id.* We reached this conclusion because Mohave County's refusal to pay was based on negligently maintained wage records that it initially failed to investigate when the former employee pointed out discrepancies. *Id.* We held that although Mohave County eventually did an investigation, admitted it owed some money, and made a settlement offer for that amount, none of those actions obviated the county's prior unreasonable, bad faith refusal to pay. *Id.*

---

**2.** The trial court adjusted the $9,976.65 figure downward by eliminating $1,387.60 in arguably illegal commissions on two sales written by appellee after her real estate license connection with appellants' broker was severed.

428

Given these holdings against a defendant which believed (albeit mistakenly) it owed nothing, appellants—who knew and admitted from the beginning that they owed appellee a substantial amount of money—cannot be excused from treble damages on the basis of their settlement offers.

■ We next address appellants' contention that under section 23–352(3), an employer who reasonably and in good faith disputes some portion of an employee's claim, may refuse to pay any part of the outstanding amount without fear of treble damages. We cannot agree with this interpretation.

It is true that the legislature did not intend to deter the litigation of good faith wage disputes, *Apache East, Inc. v. Wiegand*, 119 Ariz. 308, 312–13, 580 P.2d 769, 773–74 (App. 1978), and therefore Arizona courts have consistently held that treble damages should not be awarded in such good faith disputes. *Schade v. Diethrich*, 158 Ariz. 1, 13, 760 P.2d 1050, 1062 (1988); *Abrams v. Horizon Corp.*, 137 Ariz. 73, 78, 669 P.2d 51, 56 (1983); *Patton*, 154 Ariz. at 172, 741 P.2d at 305; *Quine v. Godwin*, 132 Ariz. 409, 413, 646 P.2d 294, 298 (App.1982); *Apache East*, 119 Ariz. at 312, 580 P.2d at 773. No Arizona court, however, has ever decided whether section 23–352(3) permits an employer to withhold liquidated amounts based on a dispute over a portion of the total wage claim. Indeed, our supreme court specifically declined to answer this question in *Abrams*. The court stated: "We ... find it unnecessary to address at this time a narrower issue posed by the parties, that is: where a good faith dispute exists as to part of the individual claim for wages due, must an employer tender the liquidated portion of the claim to avoid treble damage liability?" 137 Ariz. at 78 n. 3, 669 P.2d at 56 n. 3. This is the question we address today.

Appellants contend they were justified in withholding the entire amount of appellee's wages because her demands were "excessive" and constituted "overreaching." Essentially, appellants admit they withheld the wages simply because they were offended by appellee's efforts to extract more money from them. Appellants' subjective response to appellee's position, however, is immaterial to the issue of her entitlement to the undisputed portion of the amount she was requesting, and gives appellants no legal justification for withholding such amounts.

Here, it is undisputed that appellee was entitled to the $8,589.05 she eventually received. Yet appellants refused to pay any amount unless appellee agreed to accept the offered sums as full accord and satisfaction of all her claims. We do not believe section 23–352(3) was intended to protect employers who take this approach. In our view, the statute was intended to provide employers with a shield from treble damage liability when they retain wages based on a good faith belief that they owe nothing more. It was not meant to give employers license to retain undisputed portions of unpaid wages for use as a sword in settlement negotiations. *See Schade*, 158 Ariz. at 14, 760 P.2d at 1063.

This conclusion is consistent with Arizona treble damage wage cases and the plain language of section 23–352. For example, in *Patton* we stated that the treble damages provision "is directed against employers who delay paying wages without reasonable justification." 154 Ariz. at 172, 741 P.2d at 305. And in *Apache East* our supreme court held that "the employer [withholds wages] at his peril" because "the court in its discretion may award treble damages" if it deems the withholding unreasonable. 119 Ariz. at 312, 580 P.2d at 773. In both cases, negligently kept wage records indicating little or no wages owed formed the basis of the employers' decisions to withhold funds. Yet both employers were found lacking reasonable justification for not paying their respective employees. This raises the question: if employers act in bad faith when their refusal to pay is based on sloppy records that reflect no outstanding amount owed, how can an employer be found to be acting in good faith in not paying wages which, according to its own records, it owes? In our opinion it cannot. Refusal to pay under such circumstances constitutes bad faith.

Our supreme court reached a similar conclusion in *Abrams*. In that case, the court held that treble damages were properly assessed on the portion of withheld commissions which the employer admitted owing.

137 Ariz. at 78–79, 669 P.2d at 56–57. At the same time, however, the court held that other commissions—which the employer refused to pay on the basis of a dispute over interpretation of the employment contract—were not subject to trebling because whether they were owed at all was a matter of good faith dispute over contract interpretation. *Id.* at 79, 669 P.2d at 57. These holdings clearly lead to the conclusion that only the portion of wages which is disputed in good faith is exempted from trebling under section 23–355.

Yet appellants would have us read the statute as allowing employers to withhold the total "wages due" if "[t]here is a reasonable good faith dispute as to the amount...." A.R.S. § 23–352(3). While the language of section 23–352(3) might support such a reading when viewed in isolation, the argument fails when this language is read in the context of the entire statute.

Under section 23–352, "[n]o employer may withhold any portion of an employee's wages" unless one of three statutory exceptions applies. Because the statute prohibits withholding *any* wages without justification, the logical conclusion is that only those wages to which an exception applies may be withheld. An analysis of the first two exceptions supports this interpretation. These exceptions allow an employer to withhold portions of an employee's wages pursuant to state or federal law (e.g., for income taxes), or based on a written agreement between the employer and employee (e.g., for a retirement fund). A.R.S. § 23–352(1), (2). Neither of these exceptions can be read as granting an employer the ability to retain an employee's entire paycheck based on a dispute over such withholdings. Thus, to be consistent, the third or "good faith" exception must be read as giving an employer permission to retain only that portion of wages which it disputes owing.

This reading is also mandated by the fact that an "amount of wages" usually is "due" because it has been withheld by the employer. Thus, for purposes of this section one can view "wages due" as synonymous with wages withheld. If the latter phrase is substituted for the former, the meaning of the good faith exception becomes crystal clear: "No employer may withhold or divert any portion of an employee's wages unless ... [t]here is a reasonable good faith dispute as to the amount of wages [withheld]." A.R.S. § 23–352. In our opinion this is the proper interpretation of this exception and the only one that is consistent with prior case law, legislative intent, and the language of the statute itself.

To hold otherwise would permit employers to hold large sums of unpaid wages hostage based on a good faith dispute over some small fraction of the total. Thus, we hold that failure to tender an unrestricted payment of wages that an employer has reasonably calculated it owes its employee, constitutes bad faith and exposes an employer to the possibility of treble damages under A.R.S. section 23–355.

As a policy matter this holding is just to all parties. Employers will not lose any rights by paying wages which they admit owing. To the contrary, voluntarily tendering undisputed amounts would be strong evidence of good faith and should protect employers from treble damages. Employees will also benefit by receiving at least the undisputed portion of their unpaid wages in a timely fashion. Once the admitted amounts are paid, an employee would still be free to litigate the remaining disputed portion, but at the peril of losing and possibly having to pay the employer's attorneys' fees. Likewise, the employer, if it chooses to litigate the disputed portion, also runs the risk of losing and paying attorneys' fees and may still face treble damages on the retained amount should its refusal to pay be deemed unreasonable. Thus, both parties will have an incentive to settle their dispute without litigation.

Here, appellants should have voluntarily made a non-contingent tender of whatever funds they admitted they owed appellee. Instead, appellants retained all outstanding commissions and made all offers contingent on appellee dismissing her claim. These actions constituted unreasonable, bad faith behavior and the trial court acted within its discretion in holding appellants liable for treble damages.

## C. Attorneys' Fees

Under A.R.S. section 12–341.01 (1992), the court may award attorneys' fees to the successful party in an action arising out of a contract. Here, appellants contend that appellee was not a "successful party" because the base amount awarded by the trial court was less than the amount appellee sought and less than the amount offered prior to trial by appellants. In the alternative, appellants contend the amount awarded was unreasonable and should be reduced. We disagree.

### 1. Was Appellee the Successful Party?

 The decision as to who is the successful party for purposes of awarding attorneys' fees is within the sole discretion of the trial court, and will not be disturbed on appeal if any reasonable basis exists for it. *Schwartz v. Farmers Ins. Co.*, 166 Ariz. 33, 800 P.2d 20 (App.1990). While the award of money is an important item to consider when deciding who is the prevailing party, the fact that a party does not recover the full measure of relief it requests does not mean that it is not the successful party. *Ocean West Contractors, Inc. v. Halec Constr. Co.*, 123 Ariz. 470, 473, 600 P.2d 1102, 1105 (1979). In Arizona, "a party [is] 'successful' if he obtains judgment for an amount in excess of the setoff or counterclaim allowed." *Id.* Here, appellee was awarded $8,589.05, an amount far in excess of the setoff of $1,387.60 allowed by the court on appellants' illegality defense. Given that, we cannot say that the trial court acted unreasonably in deeming appellee the successful party.

Appellants, however, contend that the standard for determining who is a successful party and whether fees should be awarded is expressed in *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 394, 710 P.2d 1025, 1049 (1985), and *Associated Indemnity Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985), and ask us to overturn the award on the basis of that standard. Appellants misinterpret the law in two respects.

First, the factors listed in *Wagenseller* and *Associated Indemnity* are not a guide for deciding who is the prevailing party but rather are intended "to assist the trial judge in determining whether attorney's fees should be granted ... *once eligibility has been established.*" *Wagenseller*, 147 Ariz. at 394, 710 P.2d at 1049 (emphasis added). Second, those factors do not dictate our review of a trial court's decision to award fees. As our supreme court has stated:

> In reviewing the exercise of [the trial court's] discretion ...:
>
> > [T]he question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason. We cannot substitute our discretion for that of the trial judge.

*Associated Indemnity*, 143 Ariz. at 571, 694 P.2d at 1185 (citations omitted). Thus, while we consider the *Wagenseller* and *Associated Indemnity* factors, we do not substitute our own item-by-item analysis for that of the trial court.

Here, appellee's eligibility as the successful party was properly established and in light of the circumstances and the various criteria of *Wagenseller*, we cannot say that the trial court exceeded the bounds of reason in awarding attorneys' fees.

### 2. Was the Amount of Attorneys' Fees Unreasonable?

 Appellants argue that the starting point for the attorneys' fee amount should have been the one-third contingency fee limit imposed by the fee agreement between appellee and her counsel and that certain items should have been subtracted from that figure. Appellants, however, cite no authority for this proposition. Although appellants are correct in their assertion that evidence of reasonableness is required even in contingency fee cases, *Crews v. Collins*, 140 Ariz. 80, 82, 680 P.2d 216, 218 (App.1984), in our view, "'[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Timmons v. Tucson*, 171 Ariz. 350, 357, 830 P.2d 871, 878 (App.1991) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103

S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1982)). Once this "lodestar" figure has been calculated, other factors may be considered. *Id.*

Here, according to his affidavit, appellee's attorneys spent 110.8 hours on this litigation. We do not believe this to be an unreasonable or inordinate amount of time to spend on a case of this type over a fifteen-month period. Similarly, the hourly rate charged by appellee's attorneys ($115/hour) cannot be deemed excessive or unreasonable. Thus, we multiply these figures for a lodestar of $12,734. Comparing this theoretical "reasonable" fee to the $8,589.05 actually awarded, it is difficult to see how the smaller amount can be less reasonable than the larger. This remains true even if we agree with appellants that $1,739.50 of the fees was improper and should be subtracted. Subtracting that amount from the $12,734 lodestar would still leave a theoretical reasonable fee cap of $10,-994.50, an amount more than two thousand dollars higher than the actual award. Thus, we cannot say that the trial court's decision to award $8,589.05 was an abuse of discretion.[3]

## CONCLUSION

For all the foregoing reasons we find that the trial court did not abuse its discretion in awarding treble damages and attorneys' fees. Accordingly, the judgment and award are affirmed.

## COSTS AND ATTORNEYS' FEES ON APPEAL

Appellee requests this court to award her attorneys' fees and costs incurred in connection with this appeal. This court has discretion to award attorneys' fees to the successful party under A.R.S. section 12–341.01. *Wenk v. Horizon Moving & Storage Co.*, 131 Ariz. 131, 639 P.2d 321 (1982). In addition, under A.R.S. section 12–342 (1992), we are to award costs to the successful party on appeal. Appellee is the successful party in this appeal. Therefore, we award costs and at-

torneys' fees to appellee in an amount to be determined following appellee's compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

Appellee also requests this court to impose sanctions on appellants under Rule 25, Arizona Rules of Civil Appellate Procedure. Although we agree that appellants' arguments lacked merit, we do not find them so unsupported as to be frivolous. Appellee's request for sanctions is therefore denied.

GRANT, P.J., and EHRLICH, J., concur.

---

**3.** Although we view $10,994.50 as a reasonably supportable figure for fees, awarding this higher amount was impossible because the trial judge was limited to the agreed-upon 33.33% contingency fee. *Associated Indemnity,* 143 Ariz. at 570, 694 P.2d at 1184 ("The trial judge ... has broad discretion in fixing the amount of the fee *provided that 'such award may not exceed the amount paid or agreed to be paid.'* " (Emphasis added.)).