43 P.3d 174

**Mary Virginia SWANSON, Plaintiff/Appellee,**

v.

**The IMAGE BANK, INC., and Swanstock, Inc., Defendants/Appellants.**

**No. 2 CA–CV 2001–0069.**

Court of Appeals of Arizona, Division Two, Department A.

March 14, 2002.

Snell & Wilmer L.L.P., By Tibor Nagy, Jr. and Mark E. Konrad, Tucson, for Plaintiff/Appellee.

Morrison & Hecker L.L.P., By David A. Selden, Phoenix, for Defendants/Appellants.

## OPINION

PELANDER, J.

¶1 In this employment case, defendants/appellants The Image Bank, Inc. and Swanstock, Inc. (collectively referred to as TIB) appeal from the trial court's entry of partial summary judgment in favor of plaintiff/appellee Mary Virginia Swanson on her claims for breach of contract, treble damages pursuant to A.R.S. § 23–355, and attorney's fees. The judgment was entered pursuant to Rules 54(b) and 56(c)(1), Ariz. R. Civ. P., 16 A.R.S., Pt. 2. This court has jurisdiction pursuant to A.R.S. § 12–2101(B). *See GM Dev. Corp. v. Community American Mortgage Corp.*, 165 Ariz. 1, 8–9, 795 P.2d 827, 834–35 (App.1990).

¶2 The most difficult issue presented is one of first impression in Arizona: whether a choice-of-law provision in the parties' employment agreement controls to effectively preclude application of Arizona's wage and treble damage statutes, or rather, whether those statutes represent a "fundamental policy" of this state, as the trial court ruled, so as to override the choice-of-law clause. For the reasons stated below, and because we adopt the latter proposition, we affirm the trial court's judgment.

## BACKGROUND

¶3 Although the pertinent facts are largely undisputed, we view the evidence of record and reasonable inferences therefrom in the light most favorable to the parties against whom summary judgment was entered. *Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, ¶2, 33 P.3d 518, ¶2 (App.2001). TIB is a New York corporation with its home office in Texas. It represented owners of commercial photographs and film footage and licensed their photographs for use to corporations, advertising agencies, and publishers. From 1991 to 1997, Swanson owned Swanstock, an Arizona corporation that represented owners of fine art photography.

¶4 In June 1997, TIB purchased Swanstock's stock and retained Swanson to operate the company as its president, chief executive officer, and creative director pursuant to an employment agreement that all parties signed. The agreement provided for a five-year term of employment and an annual salary of $150,000. After becoming increasingly dissatisfied with Swanson's performance, TIB terminated her in July 1999 "other than 'for cause,'" pursuant to paragraph 7(a)(4) of the employment agreement. That paragraph stated in pertinent part:

Ms. Swanson's employment may be terminated by the Company, other than "for cause" as set forth in Section 7(a)(1) above, before the end of the Term, in which event Ms. Swanson shall receive and the Company shall pay to her one (1) year's Basic Compensation payable on a semi-monthly basis commencing within thirty (30) days after termination and a bonus determined in accordance with Section 3(b), pro-rated to the date of termination, to be paid by the Company within thirty (30) days after termination.

Paragraph 7(d) of the agreement stated:

Provided that all amounts payable to Ms. Swanson pursuant to this Agreement and the Stock Purchase Agreement have been paid, and TIB has not breached Section 7(c) of this Agreement or otherwise materially breached this Agreement, Ms. Swanson agrees that payment of the full amount of Basic Compensation, bonus, and other amounts payable to her hereunder following termination of her employment hereunder without "cause", shall be in full release and discharge of any claim or action she may have against the Company or any director, officer or employee of the Company or TIB arising out of this Agreement.

¶5 During the meeting at which Swanson was terminated, Elizabeth Warren, an officer of and in-house counsel for TIB, presented Swanson with a written form release that contained broader and more detailed terms

than paragraph 7(d). According to Warren's affidavit filed in this action, at that meeting TIB "offered to pay [Swanson] one-year's salary, which was conditioned upon [her] release in favor of TIB and Swanstock." Swanson refused to sign the release.

¶ 6 Two days later, Swanson's attorney told Warren in a telephone conversation that Swanson "demanded one year's salary" and that Swanson "believed she was due more under the Employment Agreement and intended to seek more."[1] Based solely on those telephonic statements, TIB withheld payment of the $150,000 severance pay, despite Swanson's demands for such payment. TIB stated below in response to an interrogatory that its "obligation to pay [severance] monies to Ms. Swanson upon termination was not unconditional" and that it had refused to pay those monies because Swanson's counsel had communicated that Swanson "did not intend to abide by, and therefore anticipatorily breached, the terms of the Agreement."

¶ 7 When TIB failed to make the severance payments, Swanson filed this action, alleging claims for breach of the employment agreement, treble damages under § 23–355 for violation of Arizona's wage statutes, and other causes of action not involved in this appeal. On the parties' cross-motions for partial summary judgment, the trial court ruled that TIB had breached the employment agreement by failing to pay Swanson the $150,000 in severance pay. The court awarded her treble damages totaling $450,000 pursuant to § 23–355 and attorney's fees in the amount of $50,000. This appeal followed.

## DISCUSSION

### I. Breach of Contract/Wage Claim

¶ 8 TIB first contends the trial court erred in entering summary judgment in favor of Swanson on her breach of contract claim. TIB argues Swanson was not entitled to receive the severance pay because she anticipatorily repudiated her duties under the employment agreement. We review de novo the trial court's summary judgment ruling

1. It is undisputed that, in making those statements, Swanson's attorney had acted as Swanson's agent because he was authorized to handle

that rejected that argument and any issues of contract interpretation. *Taylor*, 201 Ariz. 184, ¶ 29, 33 P.3d 518, ¶ 29.

¶ 9 The parties agree, and we concur, that Texas law applies to this issue based on a choice-of-law provision in their agreement. The parties also agree that, under Texas law,

n order to constitute an anticipatory breach, a party must absolutely and positively refuse to perform the same. Such refusal must be unconditional and the renunciation of the contract complete.... "To precipitate anticipatory breach, there must be a complete renunciation of the contract, a categorical claim that it never has been, or no longer is, valid and binding whatsoever."

*Admiral Motor Hotel of Texas, Inc. v. Community Inns of America, Inc.*, 389 S.W.2d 694, 700 (Tex.Civ.App.1965), *quoting Lumbermens Mut. Cas. Co. v. Klotz*, 251 F.2d 499, 504 (5th Cir.1958). *See also Dudley v. Born*, 710 S.W.2d 638, 644 (Tex.App.1986) (to constitute an anticipatory breach or repudiation, statements must be "absolute, positive, unretracted, unretractable, and unconditional").

¶ 10 In rejecting TIB's anticipatory repudiation defense, the trial court concluded that the telephonic statements of Swanson's counsel to Warren in July 1999 did not reflect "a definite and unequivocal intent to breach paragraph 7(d)" of the employment agreement. We agree. That Swanson "demanded one-year's salary," "believed she was due more under the Employment Agreement," and "intended to seek more," does not amount to "a text-book anticipatory breach," as TIB argues. Rather, those statements did not "absolutely and positively" evince a refusal to comply with the release provision in paragraph 7(d) of the agreement. *Admiral Motor Hotel*, 389 S.W.2d at 700. Nor did those statements constitute an "unconditional" and "unretractable" repudiation of that provision or of any contractual obligations Swanson had. *Dudley*, 710 S.W.2d at 644.

¶ 11 The statements of Swanson's counsel, made just a few days after the termination

all communications with TIB on Swanson's behalf.

and presumably before all potential claims had been calculated or determined, merely reflected Swanson's belief at that time that she was due and intended to seek "more" than the severance pay of "one-year's salary." Reasonably construed, the statements did not reflect an anticipatory refusal to comply with the release provision of paragraph 7(d) even if TIB fully complied with its payment obligations under paragraph 7(a)(4). Thus, we conclude as a matter of law that the statements of Swanson's counsel to Warren, on which TIB based its decision to withhold the severance payments, do not constitute an anticipatory breach by Swanson. Therefore, TIB was not relieved on that basis from further performing its contractual obligations.

¶ 12 In addition, we reject TIB's interpretation of the employment agreement. According to TIB, paragraphs 7(a)(4) and 7(d) "require[d] Swanson to accept payment of one-year's severance pay 'in full release and discharge of any claim or action she may have against [TIB] arising out of this Agreement,'" provided TIB did not owe her any amounts under the employment agreement or a separate stock purchase agreement and had not breached paragraph 7(c) of the agreement "by making disparaging remarks about her." But paragraph 7(d) expressly provided that TIB was entitled to the "full release" only if and when "all amounts payable to Ms. Swanson pursuant to this Agreement and the Stock Purchase Agreement have been paid," including any "amounts payable to her hereunder following termination of her employment hereunder without 'cause.'" Thus, the reference to "all amounts payable" in paragraph 7(d) included future amounts payable to Swanson "following termination," such as the $150,000 in severance payments TIB was obligated to make to her in semi-monthly installments pursuant to paragraph 7(a)(4). Because TIB never made those payments, it was not entitled to a release or discharge of claims. And, if TIB had fulfilled all of its payment obligations, the language of paragraph 7(d) makes clear that the "full release" would have been self-executing.

¶ 13 Contrary to TIB's argument, the agreement did not condition Swanson's entitlement to severance pay on her prior agreement to or execution of a release or, for that matter, on anything else. Paragraph 7(a)(4) states that Swanson "shall receive" and TIB "shall pay" those monies if TIB terminated her employment, as it did, "other than 'for cause.'" And, as Swanson correctly points out, paragraph 7(d) "does not make Swanson's severance payments conditional on her release of claims, *but rather makes [TIB's] release conditional on the payment of 'all amounts payable to Ms. Swanson.'"* If Swanson had received the full severance payments called for under paragraph 7(a)(4) and then had refused to release TIB or had pursued dischargeable claims against it, the situation of course would be different. But that is not what occurred here.

¶ 14 TIB's only offer to pay Swanson severance pay was Warren's date of termination "offer[ ] to pay her one-year's salary, which was conditioned upon Ms. Swanson's release in favor of TIB and Swanstock." In view of TIB's admitted failure to make the severance payments to Swanson, its attempt to impose an extracontractual condition on her right to those monies, the arguable overbreadth of TIB's proffered, premature written release that Swanson refused to sign, and TIB's eventual abandonment of any argument based on that refusal, we find no merit to TIB's assertion that it "fully complied with the terms of the Employment Agreement."

¶ 15 We also reject TIB's contention that triable factual issues precluded partial summary judgment in favor of Swanson on her breach of contract claim. TIB relies in part on Swanson's January 2001, post-judgment deposition, excerpts of which TIB filed in conjunction with its motion to vacate the trial court's summary judgment ruling pursuant to Rule 60(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 2. In that deposition, Swanson testified that, from the time of her termination in July 1999 to the filing of this action in October 1999, she was and "remained unwilling to release any claim or potential claims against Swanstock." Swanson further testified as follows about her understanding of "the concept of what it means to release claims or

potential claims against another party": "My understanding is that if you're asked to sign such a document you relieve that other party of the possibility of any suits or claims being brought against them in the future from the date of that signing."

¶ 16 The trial court ultimately denied TIB's Rule 60(c) motion, and TIB does not challenge that ruling on appeal. But even if it did, Swanson's deposition testimony, particularly viewed in the context of her "understanding" about the concept of a release, does not preclude summary judgment. As noted above, TIB based its anticipatory repudiation argument solely on the statements of Swanson's counsel to Warren, an argument we have rejected as a matter of law. The substance of Swanson's after-the-fact testimony about her unwillingness to release claims was neither communicated to TIB in 1999–2000 nor relied on as a basis for its decision to withhold severance pay. And, again, unless and until TIB fully complied with its payment obligations under the agreement, Swanson had no release obligations. No genuine issue of material fact exists. Accordingly, we affirm the trial court's partial summary judgment in favor of Swanson on her breach of contract claim.

## II. Treble Damage Award

### A. Choice–of–Law Issue

■ ¶ 17 TIB next contends the trial court's treble damage award under § 23–355 "is not legally or factually supportable." Based on the choice-of-law provision in the parties' employment agreement and, alternatively, general choice-of-law principles, TIB asserts that Texas law applies. Therefore, TIB argues, the trial court erred in awarding treble damages. We review choice-of-law questions de novo. *Garcia v. General Mo-*

---

2. TIB does not contend that, under § 23–352(1), state or federal law "required or empowered" it to withhold the severance pay otherwise due to Swanson. Nor does TIB assert that it had "prior written authorization" from Swanson to do so under § 23–352(2).

3. By statute, the Texas Employment Commission "may assess an administrative penalty" against

---

*tors Corp.*, 195 Ariz. 510, ¶ 19, 990 P.2d 1069, ¶ 19 (App.1999).

¶ 18 Section 23–352, A.R.S., provides:

No employer may withhold or divert any portion of an employee's wages unless one of the following applies:

1. The employer is required or empowered to do so by state or federal law.

2. The employer has prior written authorization from the employee.[2]

3. There is a reasonable good faith dispute as to the amount of wages due, including the amount of any counterclaim or any claim of debt, reimbursement, recoupment or set-off asserted by the employer against the employee.

Swanson and TIB clearly qualify, respectively, as an "[e]mployee" and "[e]mployer" for purposes of Arizona's wage statutes. A.R.S. § 23–350(2), (3). During the relevant time frame, Swanson resided, maintained her business office, performed most of her duties, and paid income taxes in Arizona.

¶ 19 Section 23–355, A.R.S., states: "If an employer, in violation of the provisions of this chapter, shall fail to pay wages due any employee, such employee may recover in a civil action against an employer or former employer an amount which is treble the amount of the unpaid wages." Texas has no comparable statute.[3] Section 23–355 applies to an employer's failure to pay severance or bonus pay absent a reasonable, good faith dispute as to the amount of wages due. A.R.S. § 23–350(5) ("Wages include ... severance pay."); *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1318 (9th Cir.1997); *Schade v. Diethrich*, 158 Ariz. 1, 13, 760 P.2d 1050, 1062 (1988).

■ ¶ 20 "In Arizona, courts follow the *Restatement* [ (Second) of Conflict of Laws (1971) ] to determine which state's law applies in a contract action." *Cardon v. Cotton*

---

an employer found to have "acted in bad faith in not paying wages," but the penalty may not exceed the lesser of "the amount of the wages in question or claimed, or ... $1,000." Tex. Lab. Code Ann. § 61.053 (West 2001). Texas law does permit imposition of treble damages against an employer who fails to pay commissions. Tex. Bus. & Com.Code Ann. § 35.84 (West 2001).

*Lane Holdings, Inc.,* 173 Ariz. 203, 207, 841 P.2d 198, 202 (1992). *See also Landi v. Arkules,* 172 Ariz. 126, 130, 835 P.2d 458, 462 (App.1992). In *Cardon,* our supreme court held that a California choice-of-law provision in the parties' contract documents effectively precluded a creditor's action under Arizona law for a deficiency judgment following a nonjudicial trustee's sale pursuant to a deed of trust. Despite the contractual choice-of-law provision, the court in *Cardon* applied Restatement § 187 to determine whether the parties' choice of California law was "valid and effective." 173 Ariz. at 208, 841 P.2d at 203. Thus, as in *Cardon,* "we must first determine whether the parties specifically chose the law to govern their contractual rights and duties." *Id.* at 207, 841 P.2d at 202. And, if so, we must also determine under Restatement § 187 whether that choice is effective to preclude application of, and an award under, Arizona's treble damage statute.

¶ 21 The choice-of-law provision in the parties' employment agreement states: "This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without regard to the principles of conflicts of laws." The reference to Texas's "internal laws" includes that state's statutes. *See Hambrecht & Quist Venture Partners v. American Medical Int'l, Inc.,* 38 Cal.App.4th 1532, 46 Cal.Rptr.2d 33, 38 (1995); *cf. Chrysler Corp. v. Skyline Indust. Services, Inc.,* 448 Mich. 113, 528 N.W.2d 698, 703–04 (1995). And, again, Texas has no statutory counterpart to § 23–355.

· ▮ ¶ 22 Contrary to Swanson's argument, the agreement's choice-of-law provision does not limit application of Texas law only to contract construction issues. Rather, the provision also states the agreement "shall be governed" by Texas law. In the absence of any parol evidence suggesting otherwise, that language is sufficiently broad and clear to reflect the parties' intent that Texas law shall govern their contractual rights and obligations under the agreement. *See Cardon,* 173 Ariz. at 207, 208, 841 P.2d at 202, 203 (provision in parties' credit agreement that agreement and promissory note "shall be governed by and interpreted in accordance

with" California law clearly reflected parties' intent "that California law govern their contractual rights and duties"). *See also Tele–Save Merchandising Co. v. Consumers Distrib. Co., Ltd.,* 814 F.2d 1120 (6th Cir.1987); *Economu v. Borg–Warner Corp.,* 652 F.Supp. 1242 (D.Conn.1987).

▮ ¶ 23 We question, however, whether the choice-of-law provision necessarily limits the parties' *remedies* for breach of the agreement, particularly statutory remedies for an employer's failure to pay wages, to those provided under Texas law. *See Modern Computer Systems, Inc. v. Modern Banking Systems, Inc.,* 871 F.2d 734, 741–42 (8th Cir. 1989) (Heaney, J., dissenting); *Tele–Save,* 814 F.2d at 1124–25 (Milburn, J., dissenting); *cf. Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.,* 94 F.Supp.2d 589, 596 (E.D.Pa.1999) (choice-of-law provision did not encompass remedy of rescission). But even assuming it does, we disagree with TIB that our inquiry ends there. "If the parties to a contract expressly choose the law governing their contract, as the parties did in this case, their choice of law will be honored if the requirements of *Restatement* § 187 are met." *Cardon,* 173 Ariz. at 208, 841 P.2d at 203.

¶ 24 Thus, analysis under the Restatement is required notwithstanding the language that the employment agreement "shall be governed by . . . Texas [law], without regard to the principles of conflicts of laws." Following *Cardon,* as we must, that language neither prohibits nor obviates the need for a choice-of-law analysis under Restatement § 187. That section states in pertinent part:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(1), (2).

■ ¶ 25 The employment agreement did not explicitly address whether Swanson could seek or obtain an Arizona statutory remedy for breach of the agreement's wage provisions. Under Restatement § 187(1), however, Texas law will be applied if the parties "could have resolved [a 'particular issue'] by an explicit provision in their agreement directed to that issue." The "particular issue" here is whether parties may contractually waive any statutory right or claim to treble damages under § 23–355. If Swanson could have waived that right or claim "by an explicit provision" in her employment agreement, then Texas law will be applied.

¶ 26 "A court usually applies the 'local law of the state selected by application of the rule of [Restatement] § 188' to determine whether the parties could have resolved a particular issue by explicit agreement." *Cardon,* 173 Ariz. at 208, 841 P.2d at 203, *quoting* Restatement § 187, cmt. c. In *Cardon,* the court did not have to "complete a § 188 exercise . . . because the parties could have contractually prohibited a default [sic] judgment under both Arizona [A.R.S. § 33–814(F)] and California [Cal.Civ.Proc.Code § 580d] law." *Id.*[4] Here, in contrast, no Arizona statute or case law permits parties to contractually preclude application of Arizona's wage statutes and thereby waive any

claim for treble damages under § 23–355 when they are otherwise warranted.

¶ 27 For purposes of our analysis under Restatement § 187(1), TIB concedes that Arizona law applies to the issue of whether "the parties could have resolved by an explicit provision in their agreement" to preclude treble damages under § 23–355. Therefore, we do not engage in a § 188 evaluation to determine which state's law applies to answer that question. Accordingly, we must decide whether Arizona law permits contractual waiver of claims under § 23–355.

¶ 28 TIB contends Arizona law permits "[p]arties to a contract [to] explicitly resolve the issue of what damages are available upon breach," citing *Cardon* and *Davis v. Tucson Arizona Boys Choir Soc'y,* 137 Ariz. 228, 669 P.2d 1005 (App.1983). As noted above, however, *Cardon* is distinguishable because an Arizona statute, § 33–814(F), expressly permits a creditor "to forego its right to a deficiency judgment" after property is sold pursuant to a trustee's sale. 173 Ariz. at 208, 841 P.2d at 203. Thus, "[b]ecause the parties could have explicitly agreed [under either Arizona or California law] that [the creditor] could not pursue a deficiency judgment after a trustee's sale, the parties' choice of California law to govern their agreement [was] valid under *Restatement* § 187(1)." *Id.*

¶ 29 And, in *Davis,* this court merely held that a liquidated damage provision in a contract will control as long as the damage amount is reasonable and bears some proportion to the breach. *Davis,* 137 Ariz. at 233, 669 P.2d at 1010.[5] As TIB correctly points out, the liquidated damage clause upheld in *Davis* enabled the parties to contractually prescribe the damages recoverable for breach of the contract, notwithstanding the damages that otherwise might have been recoverable under Arizona common law. But we do not find *Davis* particularly helpful, let alone controlling, because it did not present

---

4. As the court in *Cardon* noted, "[t]he legislature has explicitly provided parties to a deed of trust with the option of contractually prohibiting the recovery of a deficiency judgment after a trustee's sale." 173 Ariz. at 209, 841 P.2d at 204, *citing* A.R.S. § 33–814(F).

5. *See also Larson–Hegstrom & Associates, Inc. v. Jeffries,* 145 Ariz. 329, 333, 701 P.2d 587, 591 (App.1985) (forfeiture clause is unenforceable as penalty unless amount fixed in contract is "a reasonable forecast of just compensation" and damages are "incapable or very difficult of accurate estimation").

or address any issues relating to choice of laws, fundamental state policy, or waiver of statutory remedies. Nor did the employment agreement here contain a liquidated damage provision.[6]

¶ 30 In considering whether "the parties' choice of [Texas] law is valid and effective" for purposes of Restatement § 187(1), *Cardon*, 173 Ariz. at 208, 841 P.2d at 203, we essentially must determine whether Arizona has a " 'strong public policy' " of permitting a treble damage claim under § 23–355 when an employer has wrongfully failed to pay wages, notwithstanding the parties' choice of another state's law to govern their agreement. *Id.* at 209, 841 P.2d at 204. That inquiry is similar, if not identical, to the question posed under Restatement § 187(2)(b): whether

application of the law of the chosen state would be contrary to a fundamental policy of a[nother] state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*See Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215, 219 (10th Cir.1992) (under Restatement § 187(1), parties' choice of law in contract does not govern when "application of the law of the chosen state would be contrary to a fundamental policy of the forum state" under § 187(2)(b)). Here, as noted above, that other state concededly is Arizona. And, we evaluate this "policy" issue under Arizona law. *See* Restatement § 187, cmt. g ("The forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of [§ 187(2)(b) ] ....").

¶ 31 "There is no hard and fast rule to determine when a state policy will be considered 'fundamental.' " *Tele–Save*, 814 F.2d at 1123. The Restatement, however, "suggests that a statute may embody a 'fundamental' state policy if it is 'designed to protect a person against the oppressive use

of superior bargaining power.' " *Id., quoting* Restatement § 187, cmt. g. In our view, "[t]he key to determining whether a statute embodies a fundamental public policy is whether the state legislature enacted a statute to protect persons from the oppressive use of superior bargaining power, *not* whether this power is used in a particular case." *Modern Computer Systems*, 871 F.2d at 743 (Heaney, J., dissenting). Therefore, we take a more global perspective in examining the purpose and policy underlying Arizona's wage statutes in general and § 23–355 in particular.

¶ 32 Arizona's treble damage statute is based on several apparent policies and objectives, including the following: ensuring the prompt payment of wages, *Ayres v. Red Cloud Mills, Ltd.*, 167 Ariz. 474, 480, 808 P.2d 1226, 1232 (App.1990); discouraging employers from inducing a person to enter into and perform under an employment contract while intending to later exert pressure on the employee to accept less than he or she is entitled to under the contract, *Schade*, 158 Ariz. at 8, 14, 760 P.2d at 1057, 1063; providing incentive to settle wage disputes without litigation, *Sanborn v. Brooker & Wake Property Management, Inc.*, 178 Ariz. 425, 429, 874 P.2d 982, 986 (App.1994); and punishing employers who force their employees "to resort to the courts in an unreasonable or bad faith wage dispute." *Apache East, Inc. v. Wiegand*, 119 Ariz. 308, 313, 580 P.2d 769, 774 (App.1978).

¶ 33 The treble damage remedy is "a punitive measure that is warranted when employers seek to delay payment without reasonable justification or to defraud employees of wages earned." *Crum v. Maricopa County*, 190 Ariz. 512, 516, 950 P.2d 171, 175 (App.1997). The remedy, however, is not intended to deter litigation of good faith wage disputes. *Sanborn*, 178 Ariz. at 428, 874 P.2d at 985. Accordingly, a treble damage award under § 23–355 is appropriate only when an employer withholds wages unreasonably and in bad faith. *See* § 23–

6. Because TIB does not argue the point, we do not address whether the severance pay provision in paragraph 7(a)(4) constituted a liquidated damage clause and, if so, what effect that might have on our analysis and disposition here. Indeed, TIB asserts that it "could have included a [liquidated damage] provision in the contract," implicitly acknowledging that it did not do so.

352(3); *Schade,* 158 Ariz. at 12, 760 P.2d at 1061; *Sanborn,* 178 Ariz. at 428, 874 P.2d at 985; *Apache East,* 119 Ariz. at 312, 580 P.2d at 773. Generally, an employee from whom wages are being withheld is going to be at a distinct economic disadvantage to pursue litigation to recover those wages compared to the employer, who is holding them, regardless of the parties' relative bargaining positions at the time of contracting. Thus, in that sense, § 23–355 is " 'designed to protect [persons] from the oppressive use of superior bargaining power,' " and thereby embodies fundamental policy. *Tele–Save,* 814 F.2d at 1123, *quoting* Restatement § 187, cmt. g.

¶ 34 Our supreme court has cautioned against "a restrictive interpretation of the statute." *Schade,* 158 Ariz. at 12, 760 P.2d at 1061. Although imposition of treble damages under § 23–355 is permissive, not mandatory, that element of discretion merely reflects that such an award may be inappropriate when a wage dispute "involve[s] a valid close question of law or fact which should properly be decided by the courts," *Apache East,* 119 Ariz. at 312, 580 P.2d at 773, or when failure to pay wages was due to inadvertent mistake. *Crum,* 190 Ariz. at 516, 950 P.2d at 175. We also note that Arizona attaches criminal liability, albeit minimal, to an employer's failure to pay wages to a discharged employee. A.R.S. § 23–353(D) (violation of statute constitutes petty offense); *cf. Tele–Save,* 814 F.2d at 1125 (Milburn, J., dissenting) ("The fact that the Ohio legislature considered these protections fundamental is evidenced by the fact that Ohio provided criminal sanctions for violations of the Act.").

¶ 35 TIB contends that its withholding of the severance payment "was based upon its good faith interpretation of the parties' respective obligations under the terms of the Employment Agreement" and, therefore, was justified under § 23–352(3). That argument, however, relates to the merits and propriety of the trial court's treble damage award, assuming Arizona law applies. For purposes of the choice-of-law analysis, we must assume that the requisite criteria for a treble damage award are met and, therefore, that § 23–355 would apply unless a contract that explicitly precluded that statutory remedy is "valid and effective." *Cardon,* 173 Ariz. at 208, 841 P.2d at 203.

¶ 36 Thus, the pivotal issue is whether Arizona has a fundamental policy of permitting a treble damage award under § 23–355, and consequently prohibiting enforcement of contractual choice-of-law provisions that would preclude such an award, when the employer's withholding of wages is unreasonable and in bad faith.[7] In view of the underlying purposes and goals of Arizona's wage statutes and the "important legislative objectives" § 23–355 aims to achieve, *Schade,* 158 Ariz. at 12, 760 P.2d at 1061, we conclude that Arizona law does not countenance a contractual waiver of the remedy provided under § 23–355. Because the parties "could [not] have resolved [this 'particular issue'] by an explicit provision in their agreement," Restatement § 187(1), their choice of Texas law is not "valid and effective." *Cardon,* 173 Ariz. at 208, 841 P.2d at 203.

¶ 37 We next turn to Restatement § 187(2) to determine whether Texas law nonetheless applies to preclude application of § 23–355. Under that Restatement provision, Texas law controls unless either of the exceptions set forth in § 187(2)(a) or (b) applies. We agree with TIB that subsection (2)(a) does not negate application of Texas law because Texas clearly had a relationship to the parties and the transaction. *See Cardon,* 173 Ariz. at 207, 841 P.2d at 202 (for purposes of Restatement § 187(2)(a), parties' choice of law applies unless chosen state "has no relationship to the parties and the transaction"). *See also A.G. Edwards & Sons, Inc. v. Smith,* 736 F.Supp. 1030, 1036 (D.Ariz.1989) ("modern trend is to uphold choice-of-law clauses even in areas where there is a strong state policy unless the chosen state has no relationship whatsoever to the contract"). TIB's home

---

7. Contrary to Swanson's argument, we do not find *Landi* particularly helpful in resolving that issue. The court in *Landi* declined to give effect under Restatement § 187(2)(b) to an Illinois choice-of-law provision in the parties' "heir-finder" agreement because "application of Illinois law would be contrary to a fundamental Arizona policy regarding regulation of private investigations" conducted in Arizona. 172 Ariz. at 130, 835 P.2d at 462. But in *Landi,* unlike this case, the contract in toto was void and unenforceable on public policy grounds.

office is in Texas, and TIB representatives who negotiated the employment agreement from Texas lived and worked there. In addition, it cannot be said that the parties had "no other reasonable basis" for choosing Texas law to govern their contractual rights and duties. Restatement § 187(2)(a). *See also* § 187, cmt. f.

¶ 38 Contrary to TIB's argument, however, that again does not end the inquiry. *See Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1152 (1992). Because Restatement § 187(2) is framed in the disjunctive, Texas law still does not apply if it "would be contrary to a fundamental policy" of Arizona, which TIB concedes "has a materially greater interest" than Texas in the determination of the particular issue and, "under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement § 187(2)(b). We have concluded above that, based on Arizona's wage statutes and the important objectives underlying § 23–355 in particular, Arizona law would not permit parties prospectively to contractually waive application of § 23–355 in a case of unreasonable, bad faith withholding of wages. *See* ¶ 36, *supra.* For those same reasons, we likewise conclude that application of Texas law, which would not permit an award of treble damages in this context, "would be contrary to [Arizona's] fundamental policy," as the trial court implicitly ruled. Restatement § 187(2)(b).

¶ 39 We find unpersuasive TIB's arguments that § 23–355 does not evince any " 'fundamental public policy' " because awarding of damages under the statute is discretionary, penal in nature, and only "intended to deter and punish employers who exploit rank-and-file workers." *See Schade,* 158 Ariz. at 12, 760 P.2d at 1061 (upholding treble damage award to assistant to director of Arizona Heart Institute and noting that employer may not withhold promised compensation because it "made the promise to a unique employee"). Thus, under both Re-

statement § 187(1) and (2), the parties' choice of Texas law to govern their contractual rights and duties is invalid and ineffective as to Swanson's claim for treble damages under § 23–355.

¶ 40 The out-of-state cases TIB cites in support of a different result are distinguishable, inapposite, or unpersuasive. For example, in a factually similar case, the Maine Supreme Court rejected the plaintiff's argument that enforcing a choice-of-law provision in the parties' employment agreement would frustrate a fundamental, statutory policy of the forum state because the court apparently (and accurately) found no significant differences in application of the two states' laws.[8] *Schroeder v. Rynel, Ltd., Inc.,* 720 A.2d 1164, 1166–67 (Me.1998). Here, in contrast, Texas and Arizona law differ significantly on potential remedies for an employer's wrongful withholding of wages. In two other cases cited by TIB, the courts enforced contractual choice-of-law provisions based solely on the well-established rule in those states that the parties' choice is effective and controls, without evaluating any fundamental policies of the other state. *Bueltel v. Lumber Mut. Ins. Co.,* 134 N.C.App. 626, 518 S.E.2d 205 (1999); *Sheer Asset Management Partners v. Lauro Thin Films, Inc.,* 731 A.2d 708 (R.I.1999). Similarly, the Arizona District Court, without analyzing whether Arizona's securities fraud and racketeering statutes embodied fundamental state policy, refused to permit the plaintiff to avoid "its own choice of law provision contained in its own form contract designating the law of its principle [sic] place of business," finding plaintiff's argument "disingenuous." *A.G. Edwards,* 736 F.Supp. at 1036.

¶ 41 Two analogous cases the parties do not cite, *Tele–Save* and *Modern Computer Systems,* deserve mention. In *Tele–Save,* the parties' agreement contained a New Jersey choice-of-law provision substantially the same as the provision in this case. 814 F.2d at 1121. The plaintiff claimed that the defendant had violated an Ohio statute that not only contained a treble damage remedy but

---

8. *Compare* Me.Rev.Stat. Ann. tit. 26, § 626 (West 2002) *with* Del.Code Ann. tit. 19, §§ 1103, 1112, and 1113 (2001). These statutes have not been

amended since the decision in *Schroeder v. Rynel, Ltd., Inc.,* 720 A.2d 1164 (Me.1998).

also prohibited any waiver of the statute. Although New Jersey did not have an identical statute, New Jersey common law remedies were available. *Id.* at 1123. The Sixth Circuit Court of Appeals first recognized Ohio's principles that "strongly favor upholding the chosen law of the contracting parties." [9] *Id.* at 1122. The court enforced the choice-of-law provision and, therefore, found the Ohio statute inapplicable. The court was "unable to conclude that the Ohio ... Act represent[ed] a fundamental policy of Ohio" because "the contacts [were] fairly evenly divided between New Jersey and Ohio" and the parties "were not of unequal bargaining strength." *Id.* at 1123. And, even assuming the Ohio Act embodied fundamental policy, the court found "nothing ... to indicate that application of New Jersey law would be repugnant to or clearly contrary to the public policy of Ohio." *Id.* In *Modern Computer Systems,* the Eighth Circuit Court of Appeals followed *Tele–Save*'s approach in enforcing a Nebraska contractual choice-of-law provision and rejecting the plaintiff's contention that Minnesota's Franchise Act represented a fundamental policy that should override the parties' choice of law. 871 F.2d at 739–40.

¶ 42 We find the dissents in those two cases more persuasive than the majority opinions and concur with the view of Judge Heaney in *Modern Computer Systems* that "*Tele–Save* is based on faulty reasoning." 871 F.2d at 743 (Heaney, J., dissenting). As noted above, because Arizona's treble damage statute was intended, in part, "to protect persons [i.e., employees] from the oppressive use of superior bargaining power [by employers that wrongfully withhold wages]," the statute "embodies a fundamental public policy." *Id.*

¶ 43 We appreciate the need for certainty and predictability in contractual relations and for protecting the parties' justified expectations. *See* Restatement § 187, cmt. e. We

also acknowledge the undisputed facts that the parties in this case were relatively sophisticated, initially had equal bargaining power, and were represented by competent counsel in the negotiation and execution of the employment agreement. In addition, the agreement clearly was not an adhesion contract, nor does Swanson suggest that the agreement itself was invalid or that its choice-of-law provision resulted from any duress, coercion, mistake, or fraud.

¶ 44 All of those factors, however, must be balanced against the fundamental interests and policies of Arizona, the state that admittedly has the most significant relationship to the transaction and the parties. And the facts of a particular case should not control the outcome of a generalized choice-of-law analysis under Restatement § 187. *See* ¶ 31, *supra.* Nothing in that section suggests that the choice-of-law principles at issue here should be governed by the specific facts or by the parties' status or sophistication in a particular case. In sum, assuming the requisite criteria for a treble damage award are met, *see* ¶ 33, *supra,* § 23–355 applies to this case notwithstanding the choice-of-law provision in the parties' agreement.

**B. Summary Judgment Ruling**

¶ 45 As noted in ¶ 35 above, TIB contends that even under Arizona law the trial court erred in awarding treble damages, arguing that TIB reasonably and in good faith withheld Swanson's severance pay. We review de novo the trial court's application of § 23–355 to TIB's conduct. *Sanborn,* 178 Ariz. at 427, 874 P.2d at 984. *See also Cummings v. Aviation Specialties Trade Corp.,* 120 Ariz. 536, 587 P.2d 255 (App.1978). But if the record clearly reflects that TIB's withholding of severance pay was neither reasonable nor in good faith, we review the trial court's decision to award treble damages for an abuse of discretion. *Sanborn,* 178

---

**9.** Unlike Ohio and other states, Arizona has no clear policy of presumptively enforcing or automatically deferring to the contracting parties' choice of law that fails under a Restatement § 187 analysis, other than choice-of-law provisions in commercial contracts for the sale of goods. *See* A.R.S. § 47–1105(A). The legislature has further provided that the laws of the state under which a foreign limited liability company (LLC) is organized will "govern [the LLC's] organization and internal affairs and the liability of its members." A.R.S. § 29–801(A)(1). The employment and wage issues involved in this case, however, do not fall within either of those statutory provisions.

Ariz. at 429, 874 P.2d at 986. *See also Apache East,* 119 Ariz. at 313, 580 P.2d at 774.

¶ 46 As we discussed in connection with TIB's anticipatory breach argument, TIB's withholding of severance pay was based solely on the telephonic statements of Swanson's counsel a few days after Swanson's termination. Those statements neither constituted an anticipatory repudiation of Swanson's contractual obligations nor established any reasonable good faith basis for withholding severance pay. Even if the telephonic statements were deemed ambiguous, the record does not reflect any attempt by TIB to clarify the specific meaning of those statements or Swanson's intent about future claims. Similarly, TIB's request that Swanson execute a release at the time of termination cannot be characterized as reasonable, good faith conduct. TIB's obligation to make the severance payments under paragraph 7(a)(4) of the employment agreement was unconditional, and its interpretation of paragraph 7(d) was therefore unreasonable as a matter of law. In sum, this is a not a situation in which TIB's nonpayment was based on "a legitimate disagreement over whether the wages were due pursuant to the employment agreement," as TIB argues. *Cf. Cummings.*

¶ 47 Characterizing TIB's conduct as "irrational," the trial court aptly noted: "[I]nstead of making the payment to [Swanson] that was clearly and unequivocally due under the terms of the Agreement, supposedly on the basis that [she] might sue to ask for more, the decision was made to refuse to pay her and to thereby guarantee that she would sue." We agree with the trial court's implicit conclusion that TIB's withholding of severance pay had no reasonable, good faith basis. Under these circumstances, the trial court did not err in applying § 23–355 or abuse its discretion in awarding treble damages under that statute. *See Sanborn,* 178 Ariz. at 428, 874 P.2d at 985 (upholding treble damage award on summary judgment and noting that good faith exception to § 23–355 is "not meant to give employers license to retain undisputed portions of unpaid wages for use as a sword in settlement negotiations").

### III. Attorney's Fee Award

¶ 48 Swanson requested an award of reasonable attorney's fees based on A.R.S. §§ 12–341.01(A) and (C), 12–349, and 23–355. The trial court awarded her fees in the amount of $50,000 without specifying the basis for the award. TIB challenges that award on several grounds. We review a trial court's discretionary award of attorney's fees for an abuse of discretion. *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985).

¶ 49 TIB first contends the trial court erred because Swanson failed to cite valid authority for an award of attorney's fees. TIB cites no authority, however, for the proposition that a trial court's award of attorney's fees, supportable on one basis, is invalid if a different, invalid basis is cited to the trial court. Therefore, we do not address this unsupported assertion. *See* Ariz. R. Civ. App. P. 13(a)(6), 17B A.R.S.; *Brown v. United States Fidelity & Guar. Co.,* 194 Ariz. 85, ¶ 50, 977 P.2d 807, ¶ 50 (App.1998).

¶ 50 Attorney's fees are awardable in Arizona only when an agreement provides for them or a statute specifically authorizes them. *Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 577, 521 P.2d 1119, 1123 (1974); *In re Estate of Groves,* 163 Ariz. 394, 395, 788 P.2d 127, 128 (App.1990). Swanson's employment agreement contained no provision for attorney's fees. Thus, we will uphold the award only if the trial court had a valid statutory basis for it.

¶ 51 Under Arizona law, reasonable attorney's fees may be awarded to the successful party "in any contested action arising out of a contract, express or implied." § 12–341.01(A). TIB contends, however, that Texas law governs this issue, citing *Aries v. Palmer Johnson, Inc.,* 153 Ariz. 250, 257–58, 735 P.2d 1373, 1380–81 (App.1987). Unlike the employment agreement here, the contract in *Aries* had no choice-of-law provision. Under those circumstances, this court held that because an award of attorney's fees based on breach of contract is a matter of substantive rather than procedural law, "the local law of the state having the most significant relationship to the transaction and the

parties is the law to be applied in the absence of an effective choice of law by the parties." *Id.* at 257, 735 P.2d at 1380.

 ¶ 52 The choice-of-law provision in the employment agreement here may or may not control the issue of attorney's fees. If it does not, the rationale and result in *Aries* would support application of Arizona law, thereby authorizing the trial court's award of attorney's fees under § 12–341.01(A). But even if the *choice-of-law provision* compels application of Texas law to the attorney's fee issue, Texas also provides for recovery of attorney's fees in contract actions, as the parties acknowledge. *See* Texas Civ. Prac. & Rem.Code Ann. § 38.001 (West 2001).[10] Thus, Texas law provided an alternative statutory basis for the award here and, unlike Arizona, "[t]he award of reasonable attorney's fees to a plaintiff recovering on a valid claim founded on a written or oral contract is mandatory under Texas law." *Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 23 (Tex.App.2000). Thus, under either Texas or Arizona law, the trial court had a proper statutory basis for awarding attorney's fees.[11]

 ¶ 53 Finally, the record supports Swanson's unopposed contention that the trial court's award of $50,000 was apportioned to include only those fees incurred in the successful prosecution of her motion for partial summary judgment and not those arising from claims remaining below. Swanson's affidavit and position statement in support of an attorney's fee award and TIB's objection thereto directly addressed this issue. And the trial court did not award all the fees Swanson had requested. Although the trial court did not expressly state that it had apportioned fees in making its award, we infer that it did so based upon its review of the evidence and arguments both parties presented. In sum, we find no abuse of discretion in the attorney's fee award.

---

**10.** Pursuant to that Texas statute, "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract." Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (West 2001).

**CONCLUSION**

¶ 54 The trial court's partial summary judgment in favor of Swanson on her claims for breach of contract, treble damages, and attorney's fees is affirmed. Swanson's request for an award of reasonable attorney's fees on appeal pursuant to § 12–341.01(A) and Texas law is granted upon compliance with Rule 21(c), Ariz. R. Civ.App. P., 17B A.R.S.

BRAMMER, JR., P.J. and FLÓREZ, J., concurring.

---

**11.** In view of this conclusion, we do not address whether the attorney's fee award is supportable under §§ 12–341.01(C), 12–349, or 23–355.